Irene J. NICHOLSON, Appellant,

v.

UNITED STATES, Appellee.

No. 10294.

District of Columbia Court of Appeals.

Submitted Oct. 6, 1976.

Decided Jan. 10, 1977.

Leonard J. Bonner, Oxon Hill, Md., appointed by the court, for appellant.

Earl J. Silbert, U.S. Atty., Washington, D.C., with whom John A. Terry, Harry R. Benner and Andrea L. Harnett, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before KELLY, KERN and HARRIS, Associate Judges.

KELLY, Associate Judge:

Appellant Nicholson was convicted by a jury of second-degree murder of the late Margaret Morant and of assault with a deadly weapon upon the complainant Dorothy Yancey.[1] She contends on appeal that the trial court erred in (1) failing, upon objection, to declare inadmissible an incriminating statement of the deceased made shortly before her death; (2) failing, sua sponte, to give an intoxication defense instruction where there was some testimony that she [appellant] had been drinking during the

---

1. D.C.Code 1973, §§ 22–2403 and –502 respectively. Appellant had been charged with first-degree murder, D.C.Code 1973, § 22–2401.

course of the day and evening preceding the homicide; and (3) failing to give a requested manslaughter instruction. We find these contentions to be without merit and affirm.

The bizarre facts of this criminal episode are, briefly, that in September of 1974 Dorothy Yancey, the assault victim, was living at 1418 Fifth Street, N.W., with one Willie Sampson[2] and his cousin, Junior Peterson. Their neighbor was Harry Charles Brown. Appellant and her husband, Nick, lived in a rooming house next door to Brown.

On September 7, 1974, Margaret Morant, the murder victim, visited the Yancey household, as did appellant Nicholson. In a spirit of conviviality the assembled party ate, drank beer and vodka, played cards, and danced to records. At one point during the evening Sampson and Yancey quarreled when Sampson snatched Yancey's rent money from her. Morant became upset at this argument and retired to an upstairs bedroom. Yancey, wielding a "grass blade" (small scythe), chased Sampson out of the house. Appellant was in or near the front yard when Yancey returned to the house and the two proceeded to quarrel with one another about Sampson. The result of this disagreement was that appellant told Yancey that "somebody was going to take Willie away from [her]" and stabbed Yancey in the stomach with a weapon like an elongated penknife.[3] Although she was bleeding from the wound, Yancey chose not to go to the doctor. Instead, she remained at home for several hours watching television.

Close to two in the morning on September 8, appellant Nicholson returned to Yancey's house with her neighbor Brown. Brown testified that appellant had suggested going over to Yancey's in search of her husband. Sometime during this visit, Brown went upstairs to the bedroom to visit Morant. Shortly thereafter, appellant went home. Still later, Yancey went to a bootlegger to get more refreshments for Morant and Brown. On her way, she passed appellant who was then sitting on her own front porch. When, in about twenty minutes, Yancey returned to her house from her errand, she was told by Brown, "That damn fool [Irene] done stabbed Margaret." Brown, who had been drinking heavily, was trying to telephone for assistance. Morant was lying on Yancey's bed bleeding profusely from a chest wound and gasping for breath.

According to Brown, before the stabbing appellant and Morant were having a heated argument, the substance of which is not of record. Morant was in the upstairs bedroom with Brown; appellant was outside on the lawn. Three to four minutes after the argument had apparently subsided, the bedroom door burst open and appellant entered the room. She said something like, "Bitch, what did you say about my mother?" Brown testified that he turned around and saw appellant holding two knives. He saw her stab Morant in the chest with one of them and heard her say, "Take that." Morant said nothing. She was "laying [sic] on the edge of the bed" flat on her back at the time. There were no other weapons of any kind in the bedroom or in the possession of Morant.

Yancey was allowed to testify that when she found Morant upstairs, she picked her up in her arms and asked her, "What in the world happened?" In response Morant repeated the name, "Irene, Irene, Irene." She then made a "little funny groan" and slumped over, never to regain consciousness. Yancey thought she was dead.

The police put out a radio run on this incident at about 5:45 a.m. on September 8. Approximately one half hour earlier a patrolman had driven past the Yancey house

---

2. Sampson is the brother of the deceased, Margaret Morant.

3. Yancey claimed she was not holding the grass cutter at the time of this assault.

and observed appellant facing the building and shouting, but she quieted down when she saw the scout car. When police officers arrived in response to the radio run, they found Morant dead.

Medical testimony showed that Morant was severely intoxicated at the time of death and that she had died from a stab wound to the heart. It was estimated that she could have lived from three to thirty minutes after the wound was inflicted.

Appellant Nicholson was arrested in the early morning hours of September 8 in an apartment of a friend in the building in which she lived. A knife was found in the bed in the room in which she was found, but the government could not produce evidence proving it was the murder weapon. At the time of her arrest, appellant said to the police officer not only that "[she] didn't kill nobody" but also "if you can't find the [expletive deleted] knife, you can't prove nothing." She admitted she was at Yancey's house at 2:00 a.m. and again at 5:25 a.m., and stated that she had left to get liquor for Yancey. She denied stabbing either Yancey or Morant.

### I.

■ Contrary to appellant's initial claim on appeal, Yancey's testimony that Morant's last words were, "Irene, Irene, Irene" was admissible under the hearsay exception known as the spontaneous utterance.[4] What constitutes a spontaneous utterance depends upon the facts peculiar to each case and such utterance is admitted in the exercise of sound judicial discretion which is not disturbed on appeal unless clearly erroneous. *Beausoliel v. United States,* 71 App.D.C. 111, 113–14, 107 F.2d 292, 294–95 (1939); *Guthrie v. United States,* 92 U.S.App.D.C. 361, 364, 207 F.2d 19, 23 (1953). The decisive factor in determining admissibility of declarations relating to a violent crime made by the victim shortly after its occurrence is

that circumstances reasonably justify the conclusion that the remarks were not made under the impetus of reflection. *United States v. Glenn,* 154 U.S.App.D.C. 61, 64, 473 F.2d 191, 194 (1972). *See also Bandoni v. United States,* D.C.Mun.App., 171 A.2d 748 (1961); *United States v. Barnes,* 150 U.S.App.D.C. 319, 464 F.2d 828 (1972), *cert. denied,* 410 U.S. 986, 93 S.Ct. 1514, 36 L.Ed.2d 183 (1973); *United States v. Kearney,* 136 U.S.App.D.C. 328, 420 F.2d 170 (1969); *Lampe v. United States,* 97 U.S.App.D.C. 160, 229 F.2d 43 (1956), *cert. denied,* 359 U.S. 929, 79 S.Ct. 612, 3 L.Ed. 2d 631 (1959).

■ Elements necessary to justify the exception to the hearsay rule include (1) the presence of a serious occurrence which causes a state of nervous excitement or physical shock in the declarant, (2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or constructed it, and (3) the presence of circumstances, which in their totality suggest spontaneity and sincerity of the remark. *See generally* McCormick, Evidence § 297 (2d ed. 1972).

■ The circumstances of this case, including the shock of the injury, its obvious severity, and the fact that the victim spoke the words no more than thirty minutes after the stabbing and immediately before death, assure the strong likelihood of spontaneity and veracity in Morant's naming of her assailant. The fact that the appellant's name was given in response to an inquiry from Yancey does not prove lack of spontaneity. *United States v. Glenn, supra; Guthrie v. United States, supra; Beausoliel v. United States, supra.* And the fact that the autopsy disclosed a high percentage of alcohol in the bloodstream of the victim goes only to the weight of the testimony rather than to the admissibility of the declaration. *United States v. Glenn,*

4. We need not decide if this statement would also be admissible as a dying declaration.

*supra; Guthrie v. United States, supra.* Additionally, there is no merit in appellant's argument that Morant's repetition of appellant's name was "ambiguous" rather than accusatory. On the contrary, the natural and reasonable construction of Morant's remark was that she was naming the party who had stabbed her.

In sum, it was not reversible error to admit in evidence the disputed testimony as a spontaneous utterance for whatever weight the jury wished to ascribe to it.

## II.

■ The trial court also did not err in failing to include an intoxication instruction in its charge to the jury. Such an instruction is appropriate only where there is an adequate evidentiary predicate in the record demonstrating "such a degree of complete drunkenness that a person is incapable of forming the necessary intent essential to the commission of the crime charged." *Smith v. United States,* D.C. App., 309 A.2d 58, 59 (1973). *See also Williams v. United States,* D.C.App., 331 A.2d 341 (1975). This record contains no such foundation, for appellant herself testified that she had had only a little beer and vodka to drink during the day and evening before the stabbing. Moreover, defense counsel failed to request such an instruction, or object to its omission from the court's charge.

## III.

Finally, it was not error to deny appellant's requested manslaughter instruction, a lesser included offense to murder. As we have recently said:

[A] defendant is entitled to a manslaughter instruction only where there is some evidence that might bring the crime within the grade of the lesser offense. *See Pendergrast v. United States,* D.C.App., 332 A.2d 919 (1975); *United States v. Alexander, supra; United States v. Sinclair,* 144 U.S.App.

D.C. 13, 444 F.2d 888 (1971); *United States v. Comer,* 137 U.S.App.D.C. 214, 421 F.2d 1149 (1970). Our law recognizes as such evidence facts showing adequate provocation by the victim causing the defendant to strike out in the sudden heat of passion. *See Alexander, supra* at 391, 471 F.2d 943; *Austin v. United States,* 127 U.S.App.D.C. 180, 382 F.2d 129 (1967); *Hart v. United States,* 76 U.S.App.D.C. 193, 130 F.2d 456 (1942). [*Morgan v. United States,* D.C.App., 363 A.2d 999, 1002 (1976).]

■ Appellant's claim of adequate provocation in this case consists of an unsupported assertion that she suspected the deceased of having in the past committed adultery with her husband. Even if this were the case, however, it would not amount to legal provocation since the allegation was not of a sudden discovery of adulterous conduct causing such passion as to culminate in an immediate homicide. *Compare United States v. Comer,* 137 U.S. App.D.C. 214, 421 F.2d 1149 (1970).

■ Counsel points to testimony in the record suggesting that Morant might have verbally insulted appellant during their argument to the point that appellant was so incensed as to kill her. However, a "trivial or slight provocation, entirely disproportionate to the violence of the retaliation, is not adequate provocation. Mere words standing alone, no matter how insulting, offensive, or abusive, are not adequate provocation." *Hurt v. United States,* D.C.App., 337 A.2d 215, 218 (1975); *United States v. Alexander,* 152 U.S.App.D.C. 371, 471 F.2d 923, *cert. denied sub nom. Murdock v. United States,* 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972). Thus, appellant patently failed to produce evidence of provocation necessitating an instruction on the lesser included offense of manslaughter.

The judgments of conviction on appeal are

*Affirmed.*