**Mark K. HARRISON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12933.**

District of Columbia Court of Appeals.

Argued En Banc March 10, 1981.

Decided Aug. 31, 1981.

companion scattered coins on the floor and when the elderly gentleman bent over to pick them up appellant removed a brown envelope from the victim's overcoat pocket.[1] Although security guards were summoned by a disinterested witness,[2] appellant and his accomplice departed quickly from the terminal and avoided apprehension at that point in time.

A police officer who responded to the scene testified that he interviewed the victim about 15 minutes after the incident. He described him as a man of 83 years of age who was very upset. The victim, not realizing that he had been robbed, reported to the officer that he had just lost a brown manila envelope containing $6,000 in cash.

The complainant did not appear at trial, but a detective assigned to the case represented to the court that the victim then lived with his daughter in Louisiana. She had advised the detective that her father was unable to come to Washington for the trial because he was undergoing treatment for a nervous condition. The prosecutor represented that he also had spoken by phone with the victim's daughter and had been told the same thing.

A division of this court, with one judge dissenting, concluded that the conviction must be reversed. Such reversal was required because the police officer's testimony concerning the elderly victim's statement on the scene that the envelope contained $6,000 was hearsay evidence and deprived appellant "of the opportunity to confront a witness against him in violation of the Sixth Amendment." The division majority stated:

> We have grave difficulty, at least where a declarant is living, in permitting a hearsay statement to be used to supply an essential element of the government's case. [*Harrison v. United States*, D.C.

Peter B. Krauser, Washington, D. C., for appellant.

Michael W. Farrell, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on the petition for rehearing en banc, for appellee.

Before NEWMAN, Chief Judge, and KELLY, KERN, NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges.

KERN, Associate Judge:

A jury found appellant guilty of robbery upon the following evidence. An employee of Continental Trailways Bus terminal testified at trial that he had observed appellant and a companion approach an elderly man who had just disembarked from a bus and offered him assistance. After the soon-to-be victim declined their offer, appellant's

---

**1.** There was expert testimony that dropping coins on the floor in front of a victim is a technique commonly used by pickpockets.

**2.** This witness gave a description of the pickpocket to police on the scene, and subsequently made an identification of appellant from a photo array and a lineup. The witness had seen appellant a number of times in the terminal before the incident in question.

App., 407 A.2d 683, 687 (1979) (vacated January 21, 1981).] [3]

Subsequent to the division's opinion, the Supreme Court issued its opinion in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which examined the interplay between the hearsay rule and the Confrontation Clause. The Court noted that

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. [*Id.* at 66, 100 S.Ct. at 2539.]

The Court also stated:

> [C]ertain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the "substance of the constitutional protection." [*Id.* at 66, 100 S.Ct. at 2539, citing *Mattox v. United States*, 156 U.S. 237, 244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895).]

 We now apply the Supreme Court's teaching in *Ohio v. Roberts* to the instant case. It is not seriously questioned that the victim's declaration on the scene shortly after having his pocket picked was a "spontaneous utterance" and therefore admissible in evidence as an exception to the hearsay rule. *Nicholson v. United States*, D.C.App., 368 A.2d 561 (1971). Nor do we believe that it can be seriously questioned that this particular hearsay exception is firmly rooted and has the "solid founda-

tion" to which the Supreme Court in *Ohio v. Roberts* referred as permitting an inference of its reliability.[4] *See Beausoliel v. United States*, 71 U.S.App.D.C. 111, 113 n.7, 107 F.2d 292, 294 n.7 (1939), and authorities cited; McCormick, Evidence § 297 at 704 (2d ed. 1972); *Nicholson v. United States, supra.* Hence, we conclude the statement here constituted a hearsay exception resting upon such solid foundation that its reliability can be inferred without more and it comports with the Confrontation Clause. *Ohio v. Roberts* also requires us to address the "ultimate question": whether the government has carried its burden of showing the victim is "unavailable despite good faith efforts undertaken prior to trial to locate and present that witness." *Id.* 448 U.S. at 74, 100 S.Ct. at 2543. While recognizing with commendable candor that its showing in this case is sparse, the government nevertheless urges that it did locate and attempt to present the complainant. However, as it represented to the trial court, the victim's advanced age, his uncertain medical condition, the distance from this jurisdiction to his home and his inability to travel, in the opinion of his daughter with whom he lived, precluded his presence at trial. We are satisfied under these particular circumstances that the prosecution met its burden under *Ohio v. Roberts* of showing the unavailability of the complainant for trial.[5]

We note the government's additional point based upon the Supreme Court's comment in *Ohio v. Roberts, supra* at 65 n.7, 100 S.Ct. at 2538 n.7, citing *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), that the Court has in certain *limited*

---

**3.** Upon petition by the government this court vacated the division opinion and ordered the case reheard en banc.

**4.** We are not persuaded by appellant's argument that the out-of-court statement was inadmissible because the officer, in relating what the victim had said on the scene, described him as confused and disoriented. The reliability of a spontaneous utterance may rest to a considerable extent upon the nervous reaction of the declarant to a distressful occurrence. *See Nicholson v. United States, supra.* Certainly, the victim's confusion was a proper subject for

consideration by the trier of fact but it did not render the statement inadmissible. Put another way, the victim's mental state immediately after the robbery was relevant but it went to the weight of his statement, not its admissibility.

**5.** The government would do well to relate carefully and comprehensively for the record at trial its efforts to make the witness available and the reasons such efforts have proved unavailing.

situations found "the utility of the trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness." The government suggests the unlikelihood in the instant case that cross-examination of the victim, had he been present, would have shown any unreliability in his spontaneous utterance that $6,000 was in that brown manila envelope the eyewitness observed appellant lift from the victim's pocket. Without in any way attempting to fashion a general rule of when "the utility of trial confrontation" is "so remote" as to relieve the prosecution from showing the unavailability of its witness for the purpose of satisfying the Confrontation Clause, we do agree that it would be realistic to conclude that defense questions of the victim, were he present at trial, could not have shaken his assertion that the envelope taken from him contained money. In this particular case, at least, we view the utility to the defense of confrontation with the victim to be minimal.

*Affirmed.**

Separate statement by NEWMAN, Chief Judge:

Despite the indication in the caption of this case to the contrary, there is no "opinion of the court." The opinion by Kern, J., commands the support of four judges. The opinion by Ferren, J., (which I join), concurs in results and elucidates the disagreement he and I have with the opinion of Kern, J. Judges Mack and Kelly dissent. Since the opinion by Kern, J., only has four votes out of eight judges voting, it cannot be accurately described as an opinion of the court, for in the language of Harris, J., with which Kern, J., joined, "It cannot be [an opinion for the court], as [an opinion for the court] speaks for the court, whereas the lead opinion speaks only for four judges." *Mouzavires v. Baxter,* D.C.App., 434 A.2d 988, 998 1981).

FERREN, Associate Judge, with whom NEWMAN, Chief Judge, joins, concurring in the result:

I agree that *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), warrants affirmance on the facts here, but I believe the plurality opinion makes much to casual—and thus inaccurate—use of that decision. Thus, I cannot join in it.

In *Ohio v. Roberts, supra,* the Supreme Court considered "the relationship between the Confrontation Clause and the hearsay rule with its many exceptions," *id.* at 62, 100 S.Ct. at 2537, and reconfirmed a two-element test for determining whether hearsay satisfies the confrontation requirement:

> In sum, [1] when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. [2] Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. [*Id.* at 66, 100 S.Ct. at 2539 (footnote omitted).]

As to the second element, I agree that the hearsay statement—a spontaneous utterance—offered a solid foundation of reliability. *See Nicholson v. United States,* D.C. App., 368 A.2d 561, 564 (1971). As to the first "unavailability" element, however, I am troubled by two statements in the plurality opinion.

First, although recognizing—as the government itself does—that the showing of the victim's unavailability is "sparse," my colleagues merely assert: "We are satisfied under these particular circumstances that the prosecution met its burden under

---

* Despite the protestations of Newman, C. J., (quoting from a case in which we were split 4–4), the fact remains that here six judges agree with the holding of this opinion: that upon the basis of *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the trial court correctly admitted into evidence over defense objection the spontaneous declaration made at the scene of the crime by the complainant who was thereafter absent from trial.

*Ohio v. Roberts* of showing the unavailability of the complainant for trial." *Ante* at 736 (footnote omitted). I do not believe the facts in themselves support this conclusion. As far as the record shows, the government concluded that the victim was unavailable to testify solely on the basis of a police officer's conversation with his daughter. There is no evidence that a representative of the government ever spoke to the victim himself or to a responsible physician who could have informed the government of the nature of the victim's medical condition. While the problems of advanced age, medical condition, and difficulty of travel may prevent a witness from testifying in person—and thus make him "unavailable"—the interpretation of his condition should not be left solely to a concerned daughter, who naturally might seek to protect her father from the strain of testifying in court without regard to how serious the difficulty really would be.

Second, I am concerned about the assertion "that it would be realistic to conclude that defense questions of the victim, were he present at trial, could not have shaken his assertion that the envelope taken from him contained money." *Ante* at 736. I do not think this court is in a position to make a speculative, subjective judgment about the likely effect of cross-examination on the witness who has not been before the court, especially given the trial court's characterization of the hearsay as "crucial."[1]

Nonetheless, I agree that, under the circumstances of this case, the failure of the government to make a more convincing demonstration of unavailability does not require reversal. Although defense counsel objected to admission of the hearsay evidence, he did so entirely on the basis of the second, "reliability" element, *i. e.*, that it was not a spontaneous utterance. He never challenged the strength or good faith of the government's effort to make the witness available. The only time defense counsel questioned whether the government could have produced the victim to testify came in an entirely different context: whether the victim's absence entitled appellant to a "missing witness" instruction to the jury. Specifically, the court stated and the government agreed that the "only purpose" of the police officer's testimony about the victim's absence from trial was on the "missing witness" issue. Sustaining defense counsel's objection, the court instructed the jury to disregard the police officer's testimony "with respect to what the daughter had said about any medical condition of the complainant not being here."

Given defense counsel's failure to object on the ground of unavailability, we must find "plain error" in the trial court's failure to exclude the hearsay, *see Watts v. United States*, D.C.App., 362 A.2d 706, 709 (1976) (en banc), for there is no reason to believe the government could not have enhanced its evidence in this respect. At the time the government attempted to offer evidence of the victim's unavailability, defense counsel objected, the trial court sustained the objection, and the government necessarily retreated from this line of questioning.

For two reasons, I cannot find plain error, meaning error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Id.* First, under the rules of evidence, admissibility of a spontaneous utterance—unlike the "prior-testimony" exception at issue in *Ohio v. Roberts, supra*—is not premised on the decedent's unavailability. Authorities long have recognized that the report of a spontaneous utterance is typically more reliable than the memory of the witness who takes the stand and is subject to cross-examination. *See* 2 Jones on Evidence § 10:1 (6th ed. 1972); McCormick on Evidence § 297 (2d ed. 1972); VI Wigmore on Evidence §§ 1747, 1748 (Chadbourn rev. 1976).

---

1. In *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) cited in *Ohio v. Roberts, supra,* and by Judge KERN for the proposition that "the utility of the trial confrontation [was] so remote that it did not require the prosecution to produce a seemingly unavailable witness," *Ohio v. Roberts, supra* 448 U.S. at 65 n.7, 100 S.Ct. at 2538 n.7, *ante* at 736, the hearsay related to only one of 20 witnesses on an issue of only "peripheral significance." *Dutton, supra* 400 U.S. at 87, 91 S.Ct. at 219.

Thus, even if the victim had been available at trial, the hearsay report of his on-scene exclamation about losing $6,000 in cash in a brown manila envelope would have been admitted as substantive evidence. *See* Jones, *supra*; McCormick, *supra*, §§ 253, 297; Wigmore, *supra; cf.* FRE 803(2) in S. Saltzburg & K. Redden, Federal Rules of Evidence Manual at 524 (1972). It follows that the "reliability" element is especially strong here.

Second, there was eyewitness testimony that appellant, who was identified from a photo array and at the lineup, stole the envelope; the hearsay evidence was only necessary to show that appellant had taken something "of value" from the victim, D.C. Code 1973, § 22–2901—a crucial element of the offense but an element virtually evident from the eyewitness account itself.

In summary, I would affirm on the ground that no plain error has been shown, not on the ground that the unavailability requirement—a constitutional requirement—has been met.

MACK, Associate Judge, with whom KELLY, Associate Judge, joins, dissenting:

I respectfully dissent.

The characterization of complainant's statement as a hearsay exception does not dispose of appellant's claim that his right of confrontation was denied. The Supreme Court has made clear that while the Sixth Amendment's Confrontation Clause and every hearsay rule stem from the same roots, nevertheless, it has steadfastly declined to equate the two. *See Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). To the contrary, "[t]he historical evidence leaves little doubt . . . that the clause was intended to exclude some hearsay." *Ohio v. Roberts, supra* 448 U.S. at 63, 100 S.Ct. at 2537 (citations omitted). In expanding upon this theme, the Supreme Court in both *Roberts* and *Dutton* reiterated the language it first elucidated in *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970):

While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception.

The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." As a corollary, the Supreme Court has noted that the right of cross-examination "is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.'" *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) (citations omitted). Accordingly, it has been held that what the clause envisions is:

a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives testimony whether he is worthy of belief. [*Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed.2d 409 (1895).]

*See also Ohio v. Roberts, supra* 448 U.S. at 63–64, 100 S.Ct. at 2538. This preference for face-to-face confrontation serves to restrict the range of admissible hearsay by erecting a rule of necessity under which the prosecution must either produce the declar-

ant or, with certain exceptions,[1] demonstrate his unavailability. *See Ohio v. Roberts, supra; Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). Once the declarant's unavailability is demonstrated, the clause works to exclude hearsay unless it is "marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" *Ohio v. Roberts, supra* 448 U.S. at 65, 100 S.Ct. at 2539, *quoting Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934). Thus "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.[2] In other cases, the evidence must be excluded, at least absent a showing of *particularized guarantees* of trustworthiness." *Ohio v. Roberts, supra* 448 U.S. at 66, 100 S.Ct. at 2539 (emphasis added; footnote omitted). The emphasis is on the degree of *trustworthiness* and thus the *accuracy* of the statement. Therefore, to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement, the Supreme Court devised its "indicia of reliability" test for confrontation purposes. Under that standard, first enunciated in *Dutton v. Evans,* the Court considered whether (1) the statement contained no express assertion about past fact and so carried on its face a warning to the jury against giving it undue weight; (2) declarant's knowledge for making the out-of-court statement was well-established; (3) declarant's recollection of the crime was good; (4) declarant had any motive to misrepresent himself.

Measured by these standards, I have concern about the right of confrontation in this case. I note, initially, that the government produced hearsay testimony establishing the declarant's unavailability and appellant

raised no objection. With respect to the question whether the statement evidenced sufficient indicia of reliability for confrontation purposes, weighing in favor of admission would be the fact that the declarant was in a position to know the contents of the envelope, he had no apparent motive to lie, and the statement arguably contained no express assertion about past fact. However, unlike *Dutton,* evidence on the final consideration—whether the statement was founded on faulty recollection—was not convincing in the instant case. The evidence presented portrayed the elderly declarant as a confused and disoriented man at the time he made the statement in question. Certainly, given his condition, doubt is cast upon the *accuracy* of his statement that the envelope contained $6,000. Bearing in mind that the means of testing the declarant's accuracy are so important that the absence of proper confrontation at trial "calls into question the ultimate integrity of the fact finding process," *Chambers v. Mississippi, supra* 410 U.S. at 295, 93 S.Ct. at 1045, I would hold that under the totality of the circumstances, the hearsay statement in question did not possess sufficient indicia of reliability to allow sublimation of the protections of the Confrontation Clause.

The error committed was not harmless. In holding that the extrajudicial statement in *Dutton* passed constitutional muster, the Supreme Court placed emphasis on the fact that the evidence contested was neither "crucial" to the government's case nor "devastating" to defendant's defense. While the statement in issue here was not devastating to appellant's defense that he was home with his mother at the time of the burglary, it was crucial to the prosecution.[3] The indictment charged that appellant took from the complainant property of

---

1. *See Ohio v. Roberts, supra* at 65 n.7, 100 S.Ct. at 2538 n.7.

2. In applying this standard, the Supreme Court has concluded that *certain* hearsay exceptions rest upon such solid foundations that admission of virtually all evidence within them comports with the substance of constitutional protection. Such noted exceptions include dying declarations, cross-examined prior testimony, business records and public records. *See Ohio*

*v. Roberts, supra* at 66 n.8, 100 S.Ct. at 2539 n.8.

3. I do not agree with the government that the evidence in this case would have been sufficient to sustain the conviction in the absence of the out-of-court statement. The case of *Riley v. United States,* D.C.App., 291 A.2d 190 (1972) relied upon by the trial court is distinguishable. We found in that case that circumstantial evidence supplied by the testimony of officers

value consisting of a "brown envelope containing money." Although there was eyewitness testimony that appellant took the brown envelope from complainant, it was only through the out-of-court statement that its content of money was established.[4] I have grave difficulty, at least where a declarant is living, in permitting a hearsay statement to be used to supply an essential element of the government's case.

I would hold, therefore, that the admission of the out-of-court statement, under the circumstances of this case, has deprived appellant of the opportunity to confront a witness against him in violation of the Sixth Amendment.

witnessing a pickpocket operation was sufficient to show ownership and possession of, and lack of consent to take, a wallet belonging to a victim absent from a second trial for petty larceny and assault. The distinction between the cases is simply that the circumstantial evidence here was insufficient to show that something of value was taken.

4. Even if it is assumed that a brown envelope per se was property of value to sustain a conviction of robbery, the variance between the proof and the charge would prove fatal in this case. *See, e. g.,* the reasoning of *Barker v. United States,* D.C.App., 373 A.2d 1215 (1977).