**Fransisco REYES–CONTRERAS,**
**Appellant,**

v.

**UNITED STATES, Appellee.**

No. 97–CM–789

District of Columbia Court of Appeals.

Submitted Sept. 28, 1998.
Decided Nov. 5, 1998.

---

David H. Reiter, Washington, DC, appointed by the court, was on the brief for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth Trosman, and Elizabeth C. Coombe, Assistant United States Attorneys, were on the brief for appellee.

Before STEADMAN, RUIZ and REID, Associate Judges.

REID, Associate Judge:

After a bench trial, Fransisco[1] Reyes–Contreras was convicted of simple assault, in violation of D.C.Code § 22–504 (1996). He filed a timely appeal contending that the trial court erred by permitting the admission of certain statements by the complainant under the spontaneous utterance exception to the hearsay rule; and by denying him the opportunity to make a missing witness argument during his closing statement. We affirm. We recognize as binding on us the holding of the United States Supreme Court in *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116

---

1. The name "Fransisco" also appears in the record as "Francisco."

L.Ed.2d 848 (1992) that no showing of a declarant's unavailability for trial is required under the Confrontation Clause of the Sixth Amendment to the Constitution of the United States before a declarant's spontaneous utterance may be admitted into evidence as an exception to the hearsay rule. In addition, we hold that under traditional rules of hearsay evidence, there is no unavailability requirement for the admission of a spontaneous utterance. Finally, we conclude that the trial court did not err in admitting the complainant's declarations as spontaneous utterances; and did not abuse its discretion by prohibiting defense counsel from making a missing witness argument during closing statement.

## FACTUAL SUMMARY

Through its sole witness at trial, the government showed that on the afternoon of October 26, 1996, District of Columbia Metropolitan Police Officer Brett Parson was on routine patrol in the 1000 block of Irving Street, in the Northwest quadrant of the District of Columbia. At approximately 3:20 p.m., Officer Parson was flagged down by a crying, yelling, and visibly upset woman, later identified as Angelica Gomez. When asked what the woman looked like when he first saw her, Officer Parson stated: "She was wa[]ving her arms. She was crying. [S]he had a bruise on her face. [S]he was also bleeding from I believe it was her chin area or just by her ear." Officer Parson described Polaroid pictures he had taken of Ms. Gomez just after he arrested Mr. Reyes–Contreras. The pictures revealed a bloody mark just below Ms. Gomez's left ear, a bruise and some swelling on the left side of her chin below her lip, and red marks on the left side of her neck.

As she flagged down Officer Parson, Ms. Gomez spoke primarily in Spanish, but uttered some words in English. Officer Parson, who understood and spoke Spanish, testified that Ms. Gomez was waving her hands, and pointing to her husband, Mr. Reyes–Contreras. When the prosecutor asked Officer Parson what Ms. Gomez was saying, defense counsel objected on the grounds that: "[I]t's hearsay, and it's a violation of Mr. Reyes[-]Contreras['s] right under the

confrontation clause for this testimony to be admitted." The trial judge overruled the objection under the excited [or spontaneous] utterance exception to the hearsay rule. Defense counsel asserted: "[T]he prosecution hasn't demonstrated the unavailability of the declarant." The trial judge responded: "That's not a requirement." Officer Parson then testified: "As I was getting out of the scout car, she yelled to me, 'He hit me. He hit me.'" Ms. Gomez explained to the officer that Mr. Reyes–Contreras was her husband, and he had punched her repeatedly thirty minutes earlier. She stated that after her husband hit her, he walked away, and she followed to look for a police officer while she kept her husband in sight.

The defense called no witnesses, and presented no evidence. After closing arguments, the trial court found Mr. Reyes–Contreras guilty of simple assault.

## ANALYSIS

Mr. Reyes–Contreras contends that the trial court should not have permitted Officer Parson to testify about Ms. Gomez's hearsay statements which indicated that he hit her. He argues that his Sixth Amendment constitutional right to confrontation was violated because Ms. Gomez's statements do not fall under the excited or spontaneous utterance exception to the hearsay rule, and because the government failed to show Ms. Gomez was unavailable for testimony at trial. He also challenges his conviction on the ground that the court should have permitted him to present a missing witness argument during his closing statement. The government contends that Ms. Gomez's statements were properly admitted under the spontaneous utterance exception to the hearsay rule; there is no unavailability requirement under the Confrontation Clause for the admission of a spontaneous utterance; and the trial court did not abuse its discretion by prohibiting defense counsel from making a missing witness argument during her closing statement.

*The Spontaneous Utterance Issue*

 "The admissibility of a spontaneous utterance 'is committed to the sound discretion of the trial court. We will reverse on

appeal only if a ruling is clearly erroneous.' " *Lyons v. United States,* 683 A.2d 1080, 1083 (D.C.1996) (quoting *Alston v. United States,* 462 A.2d 1122, 1128 (D.C.1983) (citations omitted)). In order to admit a statement under this exception to the hearsay rule, three factors must be met:

> (1) the presence of a serious occurrence which causes a state of nervous excitement or physical shock in the declarant, (2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or constructed it, and (3) the presence of circumstances, which in their totality suggest spontaneity and sincerity of the remark.

*Id.* (quoting *Nicholson v. United States,* 368 A.2d 561, 564 (D.C.1977)).

Mr. Reyes–Contreras contends that the government has not met the second factor. He argues that Ms. Gomez had time to reflect on her statement in the thirty minutes that she was looking around for the police. However, we have upheld the admission of excited utterances where the period of time between the startling event and the declaration exceeded the thirty minutes in this case. *See Price v. United States,* 545 A.2d 1219, 1226 (D.C.1988) (witness statement made three hours after shooting admitted where shock and spontaneity continued); and *Harris v. United States,* 373 A.2d 590, 593 (D.C. 1977) (statement admitted two hours after declarant was shot).

■ Officer Parson described Ms. Gomez as crying, yelling, very upset, and waving her hands in the air as she made the declarations to him. Clearly, she had been through a "startling event which cause[d] a state of nervous excitement or physical shock" in her; and the circumstances of the assault and her search for police directly after the assault suggested "spontaneity and sincerity of [Ms. Gomez's] remark[s]." *Welch v. United States,* 689 A.2d 1, 4 (D.C.1996) (citations omitted); *Lyons, supra,* 683 A.2d at 1083 (citations omitted). Under the circumstances presented here, we cannot say that the trial court's decision to admit Ms. Gomez's statements as spontaneous utterances was clearly erroneous.

Mr. Reyes–Contreras also argues that Ms. Gomez's statements should not have been admitted into evidence through Officer Parson because the government failed to show that Ms. Gomez was unavailable for testimony. He relies on the Supreme Court decision in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and our decision in *Harrison v. United States,* 435 A.2d 734 (D.C.1981) (en banc) which applied *Roberts.* In *Roberts, supra,* the Supreme Court suggested that the Confrontation Clause of the Sixth Amendment to the Constitution normally requires a showing of unavailability. The *Harrison* court read *Roberts* as requiring the prosecution to show that the declarant of the spontaneous utterance was unavailable for trial. *Harrison, supra,* 435 A.2d at 736.

■ In *White v. Illinois, supra,* the Supreme Court discussed *Roberts,* and explicitly stated that no showing of unavailability is required under the Confrontation Clause of the Sixth Amendment before a spontaneous utterance may be admitted into evidence:

> In the course of rejecting the Confrontation Clause claim in [the *Roberts'*] case, we used language that might suggest that the Confrontation Clause generally requires that a declarant either be produced at trial or be found unavailable before his out-of-court statement may be admitted into evidence. However, we think such an expansive reading of the Clause is negated by our subsequent decision in [*United States v.*] *Inadi,* [475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) ].[2]

502 U.S. at 353, 112 S.Ct. 736. A footnote to our opinion in *United States v. Woodfolk,* 656 A.2d 1145 (D.C.1995), recognized the *White* holding as binding on us. In affirming the decision of the trial court admitting a 911 tape under the spontaneous utterance exception to the hearsay rule, we said in part: "[A]ppellant's argument that his rights under

---

**2.** The Supreme Court stated in *Inadi, supra,* that: "*Roberts* cannot fairly be read to stand for the radical proposition that no out-of-court state-ment can be introduced by the government without a showing that the declarant is unavailable." 475 U.S. at 394, 106 S.Ct. 1121.

the Confrontation Clause were violated, since he had no opportunity to cross-examine [the declarant], is meritless. *See White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)." *Woodfolk, supra,* 656 A.2d at 1151 n. 17. However, we did not expressly indicate that our opinion in *Harrison, supra,* had been superseded by the Supreme Court decision in *White.* We now make explicit the application of that higher authority, establishing that no showing of a declarant's unavailability for trial is required under the Confrontation Clause of the Sixth Amendment to the Constitution of the United States before a spontaneous utterance may be admitted into evidence as an exception to the hearsay rule. *White, supra,* 502 U.S. at 353, 112 S.Ct. 736.

■ Furthermore, we have not previously determined whether, as an evidentiary matter, a showing of a declarant's unavailability for trial is required before a spontaneous utterance may be admitted into evidence. One of the concurring opinions in *Harrison, supra,* broached this issue. Judge Ferren, joined by Judge Newman, pointed out in his concurring opinion in *Harrison, supra:* "[U]nder the rules of evidence, admissibility of a spontaneous utterance ... is not premised on the [declarant's] unavailability. Authorities have long recognized that the report of a spontaneous utterance is typically more reliable than the memory of the witness who takes the stand and is subject to cross-examination." *Id.* at 738 (citations omitted). The Supreme Judicial Court of Massachusetts recently reached a similar conclusion in determining whether art. 12 of the Declaration of Rights of the Massachusetts Constitution [3] required a showing of unavailability before a spontaneous utterance could be admitted:

> We see no reason to impose an unavailability requirement on reliable evidence.... We conclude that art. 12, like the Sixth Amendment to the United States Constitution, does not require a showing that the declarant is unavailable to testify at trial before a statement is admitted under the

spontaneous utterance exception to the rule against hearsay.

*Commonwealth v. Whelton,* 428 Mass. 24, 696 N.E.2d 540, 545 (Mass.1998). *See also People v. Dennis,* 17 Cal.4th 468, 71 Cal.Rptr.2d 680, 950 P.2d 1035, 1070–71 (1998) (court "reject[ed] defendant's contention that a statement admissible under Evidence Code section 1240 nevertheless violates Sixth Amendment confrontation rights unless the prosecution shows both declarant unavailability and adequate indicia of reliability"). We now hold that under the traditional rules of hearsay evidence, there is no unavailability requirement for the admission of a spontaneous utterance exception. Nor is unavailability required under the Federal Rules of Evidence. *See* Fed.R.Evid. 803(2).

In summary, we are bound by the holding in *White, supra,* that no showing of a declarant's unavailability for trial is required under the Confrontation Clause before a declarant's spontaneous utterance may be admitted into evidence, and similarly, we hold that traditional rules of hearsay evidence do not require a showing of a declarant's unavailability for the admission of a spontaneous utterance. In addition, we conclude that Ms. Gomez's statements properly fit within the firmly rooted spontaneous utterance exception to the hearsay rule, and were made within a reasonably short period of time after her husband assaulted her. Thus, there is no Confrontation Clause violation, and no violation of the traditional rules of hearsay evidence.

*The Missing Witness Issue*

Mr. Reyes–Contreras also complains that the trial court erred by preventing his counsel from making a missing witness argument during her closing statement. In closing, defense counsel stated in part: "I know that I cannot demonstrate ... for purposes of a missing witness instruction, ... why the people are not here. I cannot—but I think the Court can fairly infer from the—." The government interrupted defense counsel to make an objection which the court sustained. Defense counsel continued to argue, and was instructed by the trial court not to make a

3. Art. 12 of the Declaration of Rights of the Massachusetts Constitution provides in pertinent part: "And every subject shall have a right ... to meet the witnesses against him face to face." Mass.Const. Ann.Pt. 1, Art. 12 (1998).

missing witness argument. However, defense counsel continued, saying in part: "I think it's fair to imply from the absence of them that they have—they feel some guilt or responsibility for the incident at—at best, or that it's not an incident that was of sufficient importance [for] them to come in here to the Court to testify."

Mr. Reyes–Contreras contends that Ms. Gomez was "particularly available" to the government, and that the government had the ability to locate her and issue a subpoena commanding her appearance for his trial. He insists that the prohibition on his missing witness closing argument deprived him of his Sixth Amendment right to cross-examine a witness and to present evidence central to his defense. The government maintains that Mr. Reyes–Contreras waived any missing witness argument by conceding that he could not satisfy the "peculiarly available" factor. Furthermore, the government argues, even assuming Mr. Reyes–Contreras did not waive his missing witness argument, since Ms. Gomez's identity clearly was known to him, he could have subpoenaed her to appear in court.

■ Our case law is specific regarding the requirements for a missing witness argument. The party proposing such an argument must demonstrate that the missing witness (a) is "able to 'elucidate the transaction' such that he might be expected to be called" as a witness; and (b) is " 'peculiarly available' to the party against whom the inference [of unfavorable testimony] is made." *Arnold v. United States*, 511 A.2d 399, 415 (D.C. 1986). Moreover, "in the District of Columbia, an attorney must seek permission to make a missing witness argument before making it, so that the court may determine whether the two conditions are met." *Id.*

(citations omitted). We review a trial court's refusal to allow a missing witness argument for an abuse of discretion. *See Thomas v. United States*, 447 A.2d 52, 58 (D.C.1982) ("the [trial] court has discretion to refuse the [missing witness] instruction and argument even when the prerequisites of elucidation and peculiar availability are satisfied.").

■ Defense counsel did not seek the required permission of the court to make a missing witness argument. *See Harris v. United States*, 602 A.2d 154, 161 (D.C.1992) (en banc). Ms. Gomez was not peculiarly available to the government. *See Miles v. United States*, 483 A.2d 649, 658 (D.C.1984); *see also Strong v. United States*, 665 A.2d 194, 197 (D.C.1995). As his wife, Ms. Gomez was readily available to Mr. Reyes–Contreras. Even if Ms. Gomez had been presented as a witness, however, she could have invoked the marital privilege and refused to testify against her husband. *See Hammill v. United States*, 498 A.2d 551, 556 (D.C.1985); *Kleinbart v. United States*, 426 A.2d 343, 351 (D.C.1981). Based upon these factors and the record before us, we cannot say that the trial court abused its discretion by prohibiting defense counsel from articulating a missing witness argument during her closing statement. *Thomas, supra*, 447 A.2d at 58.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*