John KATKISH, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 97–CV–1814.

District of Columbia Court of Appeals.

Argued Sept. 2, 2000.

Decided Oct. 18, 2000.*

* The decision in this case was originally released as a Memorandum Opinion and Judgment on October 18, 2000. This revised opinion is now being published by direction of the court.

Timothy Guy Smith, for appellant.

James C. McKay, Jr., Assistant Corporation, D.C., with whom Robert R. Rigsby, Corporation Counsel, D.C., and Charles L. Reischel, Deputy Corporation Counsel, D.C., were on the brief, for appellee.

Before SCHWELB, RUIZ, and WASHINGTON, Associate Judges.

RUIZ, Associate Judge:

Appellant, John Katkish, sued the District of Columbia for negligence for property damage caused by a tree that fell on his house. He appeals the decision of the Superior Court in favor of the District. Katkish contends on appeal that the trial court erred in not finding the District negligent and ruling that expert testimony was necessary to establish a standard of care. He also contends that the trial court erred in not drawing an adverse inference against the District because it omitted an employee with personal knowledge about the circumstances of the case from its witness list and failed to identify the employee in its response to appellant's interrogatories. We affirm.

## I. FACTUAL SUMMARY

### 1. The Trial

Appellant testified that on May 27, 1994, a large tree fell on his house. Appellant had called the District of Columbia Tree and Landscape Division of the Department of Public Works on May 20, 1994 to complain about this tree because he noticed the tree had shifted and was leaning more prominently toward his house. Appellant testified that he represented to the employee who took the call that this was an emergency situation and the sidewalk was cracked and uplifted. The Tree and Landscape Division's record of the call, however, shows the caller reporting a tree that is "dead" and "leaning." The trial court found that appellant had not conveyed the emergency nature of the situation, noting that appellant did not call or write the District again after May 20, and that even though appellant saw a Tree and Land Division crew in front of his house a few days after his call, he did not approach them about the tree in front of his house.

Appellant called Mr. James Biller as an expert arborist. Mr. Biller testified that a sixty-foot oak tree leaning toward a house with a lifting curb would warrant immedi-

ate inspection and possible abatement. The trial court rejected the opinion of Mr. Biller because he failed to define a national standard of care for the maintenance of leaning trees or the response time to notification of that condition. In addition, Mr. Biller based his opinion on what Virginia municipalities do and lacked familiarity with the District of Columbia's horticultural situation and how it compared to that in Virginia.

Appellant also called Mr. Thomas Mayer as an expert in utility arboriculture. Mr. Mayer's testimony was rejected by the trial court because he did not specify a national standard or one relating to comparable municipalities. The trial court observed that, "neither Mr. Mayer nor Mr. Biller presented any standard of care that related curb and street changes to a need for inspection and response." The court also rejected the portions of Mr. Mayer's and Mr. Biller's opinions based on hypothetical questions because they rested on the portions of testimony of Mr. Katkish, that the court did not accept, about the emergency nature of the situation.

## 2. *Missing Witness Inference*

On the first day of trial, Ms. Sandra Hill, a D.C. Department of Public Works employee, testified that Alvin Baltimore was the data entry clerk who apparently took the call from appellant on May 20. After the close of the evidence, appellant asked the trial court for an adverse inference against the District, under the missing-witness presumption, because the District had offered no explanation as to why Alvin Baltimore, a current employee of the District, did not testify. The trial court questioned whether Mr. Baltimore was "peculiarly available" to the District and why appellant's attorney did not attempt to contact Mr. Baltimore once his identity and current employment was established. The trial court did not draw an adverse inference from the District's failure to call Mr. Baltimore as a witness.

## II. ANALYSIS

### 1. *Negligence*

The trial court held that appellant did not meet his burden of proof as to the negligence of the District of Columbia. We agree. Where the judgment of the trial judge as the trier of fact relied on an evaluation of a witness's credibility, we will not disturb the findings unless they are "plainly wrong or without evidence to support them." *In re Burton,* 614 A.2d 46, 48 (D.C.1992). The trial court found that appellant did not convey the emergency nature of the situation to the Tree and Land Division when he called on May 20. There is ample evidence in the record to support the trial court's determination. For example, appellant made no follow-up contacts to the District after May 20 even though he testified that he believed the tree was going to fall. There was no evidence of written communication to the Tree and Land Division or the Mayor regarding the situation. Moreover, appellant saw a Tree and Land Division crew outside his house after he had noticed the leaning tree, but before it fell, yet took no action to contact the crew to have them look at the tree. Therefore, the trial court's ruling was supported by the evidence.

Based on the trial court's finding that appellant did not convey the emergency nature of the situation, we agree with its ruling that expert testimony was necessary to establish the standard of care in this case. While expert testimony regarding the appropriate standard of care is not necessary for acts " 'within the realm of common knowledge and everyday experience,' " *Messina v. District of Columbia,* 663 A.2d 535, 538 (D.C.1995) (quoting *District of Columbia v. White,* 442 A.2d 159, 164 (D.C.1982)), a plaintiff must put on expert testimony to establish the standard of care when the issue in question is "so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *District of Columbia v. Peters,* 527 A.2d 1269, 1273

(D.C.1987). The expert's testimony "must clearly relate the standard of care to the practices in fact generally followed by other comparable governmental facilities or to some standard nationally recognized by such units." *Clark v. District of Columbia,* 708 A.2d 632 (D.C.1997).

In *Messina,* we held that whether the District should conform to a particular cushioning standard for the ground under the monkey bars on a school playground to prevent injuries required expert testimony. *See Messina,* 663 A.2d at 538. In *District of Columbia v. Arnold & Porter,* we held that the operation and maintenance of a municipal water main system and the handling of leaks in that system "are not subjects within the common knowledge of jurors ... (and) expert testimony was required ... as to the applicable standard of care." 756 A.2d 427, 435 (D.C. 2000).[1] Similarly, an average lay person is not capable of discerning when a leaning tree may create a dangerous situation requiring an emergency response and whether the likelihood of the tree falling is related to the condition of the tree, the street, or other circumstances. Therefore, we hold that the trial court did not err in ruling that the standard of reasonable care and maintenance of a dead and leaning tree by a municipality, at least in the non-emergency situation presented here, are beyond the ken of the average person. Based on the findings of the court that appellant told the District only that there was a "dead" and "leaning" tree in front of his house, we agree that expert testimony was needed to determine the standard of care the District of Columbia needed to meet to abate the situation. Because appellant did not provide adequate expert testimony as to the standard of care, he failed to carry his burden for negligence.

*See Toy v. District of Columbia,* 549 A.2d 1, 6 (D.C.1988) (discussing that the plaintiff in a negligence action bears the burden of proof on: 1) the applicable standard of care; 2) a deviation from that standard by the defendant, and 3) a causal relationship between that deviation and the plaintiff's injury).

### 2. *Missing Witness Inference*

■■■ Appellant secondly argues that the trial court erred in not drawing an adverse inference because of the missing testimony of Mr. Alvin Baltimore, the data entry clerk who entered appellant's May 20 call into the computer. In a jury trial, the trial court's decision to permit such an argument or give an instruction is reviewed for abuse of discretion. *See Reyes–Contreras v. United States,* 719 A.2d 503, 508 (D.C.1998); *Thomas v. United States,* 447 A.2d 52, 58 (D.C.1982) ("the court has discretion to refuse the [missing witness] instruction and argument even when the prerequisites of elucidation and peculiar availability are satisfied."). Even when the inference is permissible, the finder of fact is free to draw the inference, or not. We hold that the trial court did not abuse its discretion in considering the factors relevant to allowance of the inference, nor erred as fact finder in not drawing an adverse inference.

■■■ The requirements for a missing witness inference are that the party proposing such inference must demonstrate that the missing witness is, "(a) able to elucidate the transaction such that he might be expected to be called as a witness; and (b) is peculiarly available to the party against whom the inference (of unfavorable testimony) is made." *Reyes–*

---

1. Appellant cites *Husovsky v. United States,* 191 U.S.App.D.C. 242, 590 F.2d 944 (1978), for the proposition that the District of Columbia has a duty to be alert to the presence of, and carefully observe at periodic intervals, trees which may present hazards. While it is correct that *Husovsky* concerned the negligence of the District of Columbia in failing to inspect or abate a potentially hazardous poplar tree, it did not address whether expert testimony is required to establish the standard of care imposed by that duty. In *Husovsky,* the court entered a finding of fact on the prevailing standard, based on the testimony of an expert arborist. *See id.,* 191 U.S.App.D.C. at 246 n. 5, 590 F.2d at 948 n. 5.

*Contreras*, 719 A.2d at 508 (internal citations omitted).[2] Moreover, as this court explained in *Stager v. Schneider*, 494 A.2d 1307, 1313 (D.C.1985), the trial court must exercise discretion in making its decision whether to give an instruction on the missing witness inference and be "constantly mindful of the dangers inherent in creating evidence from nonevidence." *Stager*, 494 A.2d at 1313 (citing *Thomas v. United States*, 447 A.2d 52, 58 (D.C.1982)).

In this case, appellant did not demonstrate that the trial court abused its discretion in applying the law or erred as fact finder by declining to draw a missing witness inference. The trial court noted that appellant's counsel made no attempt to depose Mr. Baltimore or to obtain his testimony after his name and role in entering appellant's call were discussed on the first day of a four-day trial.[3] Under these circumstances, and given the principle that the missing witness inference "need not be applied broadly or rigidly," *Dent, supra* note 2, 404 A.2d at 171, we cannot conclude that the trial court erred as fact finder in refusing to draw the inference.[4]

*Affirmed.*

---

2. Some courts have held that the "peculiarly available" requirement does not permit an inference to arise from the failure of one party to call a witness unless there is a showing that the witness was not available to be subpoenaed by the other party. *See Brown v. United States*, 134 U.S.App.D.C. 269, 414 F.2d 1165 (D.C.Cir.1969); *Coombs v. United States*, 399 A.2d 1313 (D.C.1979). *Cf. Dent v. United States*, 404 A.2d 165, 170 (D.C.1979) (discussing that witness may be considered "unavailable" although amenable to subpoena, based upon witness' relationship to the parties and the nature of the testimony witness might be expected to give in light of witness' previous statements about the case).

3. Appellant argued during oral argument that the trial court erred in stating that it "could not" draw an adverse inference because the witness was not peculiarly available. Appellant is incorrect. First, there is no statement in the record of the trial judge stating that he "could not" draw an adverse inference. Second, had the trial judge stated that he "could not" draw an adverse inference if the witness was not peculiarly available, he would have been correct. An adverse inference is not permitted unless the two requirements from *Reyes–Contreras*, discussed in the text, are met. *See Conyers v. United States*, 309 A.2d 309, 312–13 (noting that if either condition is not present, "(missing witness) comment by counsel and instruction by the judge ... is prohibited").

4. At trial, appellant's counsel cited *Slenderella Systems Inc. v. Greber*, 163 A.2d 462 (D.C. 1960), for the proposition that employees are determined to be under the particular control of their employers and thus are peculiarly available to their employers. *Slenderella*, however, merely states that a proper inference may be made from a party's failure to call its agent; the ruling does not discuss the requirements for the "peculiarly available" requirement nor does it state that all employees are "peculiarly available" to their employer for purposes of the missing witness inference. *See Slenderella*, 163 A.2d at 464. In *Dent, supra* note 2, we discussed the "peculiarly available" requirement in terms of both physical and "practical" availability, and recognized that a party's employee may be "practically unavailable" to the opposing party. 404 A.2d at 169–171. Yet we also noted that, even where the two conditions for the inference are satisfied, the trial court "still has discretion to deny adversary comment on the absence of those witnesses on the theory that the rule need not be applied broadly or rigidly." *Id.* at 171.