Cecil G. ALSTON, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1446.

District of Columbia Court of Appeals.

Argued Nov. 23, 1982.

Decided June 16, 1983.

Samuel M. Shapiro, Rockville, Md., for appellant.

Helen M. Bollwerk, Asst. U.S. Atty., Washington, D.C., with whom Stanley S.

Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., at the time the briefs were filed, Michael W. Farrell and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and MACK, Associate Judges, and GARDNER,* Associate Judge, Superior Court of the District of Columbia.

MACK, Associate Judge:

Following a jury trial, appellant was convicted of assault with intent to commit carnal knowledge in violation of D.C.Code § 22–501 (1981). Appellant asserts that testimony of three government witnesses as to statements made by the victim, appellant's four-year-old step-daughter, were improperly classified as spontaneous utterances and erroneously admitted under that exception to the hearsay rule.[1] We find that the challenged statements do not constitute spontaneous utterances. Since we cannot say that their admission did not substantially sway the judgment of the jury in its deliberations, we reverse and remand.

PRETRIAL HEARING

Prior to trial, the court held an evidentiary hearing to rule on whether hearsay statements made by the victim, in which she identified appellant as the perpetrator of the crime, were admissible under the excited utterance exception. Appellant's wife, Mrs. Alston, testified that on the evening of November 1, 1980, she and her husband had a disagreement regarding a party which she did not want to attend; ultimately, Mr. Alston left the apartment alone. That night, Mrs. Alston went to sleep in her bedroom and her daughter came into bed with her. As the sun was rising, Mrs. Alston noticed her husband taking the child out of their bed and putting the child in her own room. When Mrs. Alston awoke at 8:00 or 9:00 a.m. the next morning, November 2, her daughter was already up and in her parent's bedroom playing with Brandy, the Alston's infant. Mrs. Alston testified that during this time period, her daughter showed no signs of being upset. Mr. Alston left the house to purchase a newspaper at about 9:00 or 9:30 a.m. Sometime after Mr. Alston left, Mrs. Alston noticed her daughter in the bathroom wiping her bottom lightly as if she were sore. Mrs. Alston put the child on a bed, examined her genital area and observed an incision; she also noticed blood on her daughter's panties. The child was not crying at this time, nor did she complain of any pain.

Mrs. Alston asked her daughter what had happened but received no response. The mother then exhibited extreme anger; she shook the child several times, repeating the same question. Her daughter then said Butch[2] had done it. At this point, Mrs. Alston went to the apartment of Mr. Alston's aunt, Mrs. Walton, who lived in the same building, returned to the Alston apartment with her, and both adults examined the girl. Mrs. Alston, Mrs. Walton and the child then left the apartment, went to their physician's office and were referred to Children's hospital. At the hospital, Mrs. Alston met with Detective Carol White, Officer Gloria Donahue and Tremaine Terry (a social worker with the child abuse, sex team at the Hospital) all of whom also spoke with the child. Mrs. Alston thought that Ms. Terry had asked her daughter

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1981).

1. Appellant further contends that the statements should have been excluded because (1) they lacked sufficient indicia of reliability to comport with the mandates of the Confrontation Clause; (2) their probative value was substantially outweighed by their prejudicial effect; (3) the government failed to give appellant adequate notice that the statements would be used; and (4) the government failed to meet the required standard of diligence in showing declarant unavailable. In addition, appellant alleges that because of insufficient corroboration of declarant's statements, the trial court erred in denying the motion for judgment of acquittal. Because we find the challenged testimony was erroneously admitted under the excited utterance exception to the hearsay rule, we need not address these issues.

2. The victim referred to appellant as "Butch."

whether Butch had lain on her and that the child nodded her head affirmatively.

The only other witness who testified at the hearing was Dr. Harris Feinstein, a resident in pediatric medicine at Children's Hospital, who qualified as an expert in abuse and sex abuse of children. Dr. Feinstein had examined the victim in the emergency room at Children's Hospital. Before the examination, he asked her why she was at the hospital; the child didn't answer but was "apprehensive and she began crying." Dr. Feinstein then performed a physical examination and noticed three fresh lacerations (*i.e.*, cuts experienced within the last 24 hours) in the genital area. His diagnosis was that "these were injuries that could be consistent with some sort of forced entry or attempted entry into the vaginal area" and, though it was possible that some other trauma could create that sort of wound, it was "very highly unlikely."

Based on the testimony presented at the pretrial hearing, along with the government's proffer that statements made by the victim in response to questions posed by Mrs. Alston and Detective Carol White would be offered at the trial, the court, noting that, "the indicia of trustworthiness, as far as this child's utterances are concerned, is marginal at best" nonetheless ruled the statements admissible.

TRIAL

At trial, the victim was totally unresponsive to questioning, and the court found her to be unavailable. The prosecution's case began with testimony by Dr. Feinstein which was, by and large, identical with his testimony at the pretrial hearing.

After being examined by Dr. Feinstein, the child was seen by Ms. Tremaine Terry, a social worker on the sex abuse team at Children's Hospital, in an interviewing playroom. Ms. Terry testified that the child was in the room for 30 to 45 minutes before any questioning began. Ms. Terry asked her what had happened; the child said nothing, but hid her face and continued to play. Ms. Terry then called the child over to her. She stood at Ms. Terry's knee and the social worker again asked her if she could tell her what happened; the child responded "Butch did it." When asked what it was that Butch did, she said, "he got on top of me." At the time of this communication, according to Ms. Terry, the child was in distress and her voice was shaking.

Detective Carol White, an investigator with the sex offense branch of the Metropolitan Police Department, was also present in the playroom and questioned the victim. Detective White testified that when she asked the child who hurt her down there, pointing to her vaginal area, that she said "Butch." Detective White then asked where the event had occurred; when she asked if it happened in the mother's room, the child indicated no; when asked if it occurred in her room, the child said yes.

Mrs. Walton testified that on November 2 at about 1:00 p.m., Mrs. Alston came to her apartment. Upon returning to the Alston residence, they examined the child and Mrs. Walton saw three marks in her genital area. Mrs. Walton testified that Mrs. Alston asked her daughter if "Butch did it, get into bed with her." The child never spoke but nodded her head indicating an affirmative response. Mrs. Alston repeated the same question numerous times; the child nodded her head at times, and shook her head to indicate a negative response at other times. According to Mrs. Walton, the child did not seem frightened but was playing normally. The three then went to a physician's office and afterward to Children's Hospital. Mrs. Walton was present in the playroom with Mrs. Alston and the child when Ms. Terry was questioning the child. According to Mrs. Walton, although Mrs. Alston repeatedly questioned her daughter as to what happened, she never responded. When Ms. Terry asked if Butch "laid on top of you" and "if Butch did this to you," the child remained silent.

Mrs. Alston did not testify at the trial.[3]

In denying appellant's motion for judgment of acquittal, the court stated:

> I believe the totality of the circumstances under which it appears the statements were made by this child are sufficiently compelling, given the fact that there—was beyond any doubt by the medical testimony that this child had sustained a recent traumatic injury to her genital area, and coupled with the circumstances, surrounding circumstances, under which these statements were made and the persons to whom they were made to, together with the fact that the child herself has been demonstrated to be unavailable as a witness on this subject, due to her age and her emotional state and condition, under such circumstances these hearsay statements made have sufficient trustworthiness and the indicia of reliability to be admitted and considered in this matter by the jury under such circumstances.

Appellant now appeals the conviction on the ground that the testimony of Ms. Terry and Detective White as to comments made by the victim identifying appellant as the assailant, and the testimony of Mrs. Walton as to the child's nodding in response to questioning, constitute inadmissible hearsay and were improperly admitted under the excited or spontaneous utterance exception. We agree.

■ There is no dispute that the challenged testimony constitutes hearsay and is, thereby, generally inadmissible. However, [d]eclarations, exclamations and remarks made by the victim of a crime after the time of its occurrence are sometimes admissible upon the theory that "under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy."

*Beausoliel v. United States,* 71 U.S.App. D.C. 111, 113, 107 F.2d 292, 294 (1939) (citations omitted).

■ In the District of Columbia, the elements of a spontaneous or excited utterance are "(1) the presence of a serious occurrence which causes a state of nervous excitement or physical shock in the declarant, (2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or constructed it, and (3) the presence of circum-

---

**3.** Mrs. Alston invoked the marital privilege and was not compelled to testify pursuant to D.C. Code § 14–306(a) (1981) which reads: "In civil and criminal proceedings, a husband or his wife is competent but not compellable to testify for or against the other."

When the testimony constitutes a confidential communication between spouses, D.C.Code § 14–306(b) (1981) governs and the spouse is found "not competent to testify as to any confidential communications made by one to the other during the marriage." "[J]ustification for this privilege against adverse spousal testimony is its perceived role in fostering the harmony and sanctity of the marital relationship." *Trammel v. United States,* 445 U.S. 40, 44, 100 S.Ct. 906, 909, 63 L.Ed.2d 186 (1980). Thus, one cannot invoke § 14–306(b) to prevent a spouse from testifying when the offense com-

mitted is against the spouse and the marital relationship. *Wyatt v. United States,* 362 U.S. 525, 529, 80 S.Ct. 901, 904, 4 L.Ed.2d 931 (1960); *see also Morgan v. United States,* 363 A.2d 999, 1004 n. 5 (D.C.App.1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977).

There is no question that Mrs. Alston's invocation of privilege is not governed by § 14–306(b) for the testimony would not relate to a confidential communication. On remand, however, the government may wish to further explore the issue of whether the rationale which limits the invocation of incompetence to testify as to a confidential communication should be applied to limit the invocation of noncompellability to testify when, as here, the offense about which the testimony relates, involves a violation of the marital relationship.

stances, which in their totality suggest spontaneity and sincerity of the remark." *Nicholson v. United States,* 368 A.2d 561, 564 (D.C.App.1977).

A showing sufficient to satisfy the first element cannot be made when there is no evidence that the declarant suffered mental disturbance or physical shock as a result of the event. *Brown v. United States,* 80 U.S.App.D.C. 270, 271, 152 F.2d 138, 139 (1945). Even if such evidence is presented, if the reaction has ceased during peaceful hours between the event and the utterance, the statement cannot be admitted. *Id.* Similarly, when the declaration consists of a calm narrative of a past event, it loses the character of a spontaneous utterance. *Id.; Fitzgerald v. United States,* 412 A.2d 1, 9 (D.C.App.1980); *Smith v. United States,* 94 U.S.App.D.C. 320, 321, 215 F.2d 682, 683 (1954) (per curiam).

When, however, there is evidence that the declarant was highly distraught and in shock at the time the statement was uttered, then an adequate showing as to the first element is made. *Wheeler v. United States,* 93 U.S.App.D.C. 159, 164, 211 F.2d 19, 24 (1953), *cert. denied,* 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140 (1954); *see also Guthrie v. United States,* 92 U.S.App.D.C. 361, 365, 207 F.2d 19, 23 (1953) (declarant fatally injured and in great pain); *Nicholson v. United States, supra,* 368 A.2d at 564 (declaration made no more than thirty minutes after stabbing and immediately before death).

Second, the party seeking to admit hearsay testimony under the spontaneous utterance exception must show "the declaration was made within a reasonably short period of time after the occurrence so as to assure that the declarant has not reflected upon his statement or premeditated or constructed it." While the time element is not controlling, it is of great significance. *Fitzgerald v. United States, supra,* 412 A.2d at 9; *Beausoliel v. United States, supra,* 71 U.S.App.D.C. at 114, 107 F.2d at 295. Thus, when the utterance is made immediately

after the disturbing incident, *Baber v. United States,* 116 U.S.App.D.C. 358, 359, 324 F.2d 390, 391 (1963); *Jones v. United States,* 97 U.S.App.D.C. 291, 231 F.2d 244 (1956), or a few minutes after the incident, *Beausoliel v. United States, supra,* 71 U.S.App.D.C. at 113, 107 F.2d at 294, the declarations can properly be admitted under this hearsay exception. Statements made one hour after the alleged offense have been allowed in when the age and condition of the declarant support spontaneity. *Wheeler v. United States, supra,* 93 U.S.App.D.C. at 164, 211 F.2d at 24 (ten year-old girl was highly distraught and in shock); *Bandoni v. United States,* 171 A.2d 748, 750 (D.C.Mun. App.1961) (declaration influenced by stress of nervous excitement).

With these guiding principles in mind, we turn to the facts of the case before us. The government asserts that the child's sole act of wiping her bottom lightly in a peculiar manner "as if she [were] sore" indicates that she was in physical shock and is sufficient to satisfy the requisite showing for the first element of a spontaneous utterance. We disagree. At the pretrial hearing, Mrs. Alston testified that between the time her daughter awoke and was observed in the bathroom, "She wasn't acting emotionally upset. She was acting like she normally do, come in, and play with the baby," and behaved in her usual manner. Further testimony indicates that even after Mrs. Alston and Mrs. Walton examined the child, she was not emotionally upset. According to Mrs. Walton, the child did not seem frightened at all but was "playing like I normally see her play." Based on these facts, it can hardly be said that the victim was disturbed, distraught, in shock or still "in the throes of a traumatic episode, before she could reflect." *See Fitzgerald v. United States, supra,* 412 A.2d at 9.

We find the hearsay statements also fail to fulfill the conditions of the second element of a spontaneous utterance. While it is true that when "the victim is of such an age as to render it improbable that her utterance was deliberate and its effect pre-

meditated, the utterance need not be so nearly contemporaneous with the principal transaction 'as in the case of an older person, whose reflective powers are not presumed to be so easily affected or kept in abeyance,'" *Beausoliel v. United States, supra,* 71 U.S.App.D.C. at 114, 107 F.2d at 295 (citing *Soto v. Territory,* 12 Ariz. 36, 94 P. 1104, 1105 (1908)), we do not find that principle applicable to this case. In *Beausoliel,* the statements of a six year-old girl which were held to qualify as a spontaneous utterance, were made to her mother a few minutes after the event which triggered the comment. Here, while the precise timing of the events is not clear from the record, the child's first statement, in response to her mother's angry shaking of the child and repeated questioning, was made at least one hour after the child awoke that morning. Ignoring, for the moment, the additional hours between the alleged offense and the time the child awoke, we find the temporal proximity between the event and the statement to be marginally adequate, at best.

The child's statements to Ms. Terry and to Detective White unquestionably exceed any time limitations we have heretofore held permissible. After the child's initial response to her mother, Mrs. Walton was fetched and both adults examined the girl; according to Mrs. Walton, this occurred at about 1:00 p.m. The three remained in the Alston apartment for thirty minutes before they went to the physician's office and continued on to Children's Hospital. The child was first examined by Dr. Feinstein in the Emergency Room before being directed to the playroom. According to Ms. Terry, the child was in the playroom 30 to 45 minutes before the social worker began her questioning as to the events. The victim's hearsay statements to Detective White were also made while they were in the playroom.

Assigning conservative estimates to the timing of the day's events, we find that several "peaceful hours" passed between the time of the alleged offense and the time of the child's initial response to her mother's inquiry and that the statements made in the presence of Mrs. Walton, were made somewhere between one and four hours after the child awoke. The child's responses to Ms. Terry's and Detective White's questioning were made at least two hours later. Given the circumstances under which the mother obtained the first statement, we find the declarations were not made within a reasonably short period of time to assure the integrity of the underlying basis of this hearsay exception.

Finally, we examine whether the totality of circumstances surrounding the declarations support a finding of spontaneity and sincerity; we find they do not. Although the fact that the statements were made in response to a question is not decisive, *Beausoliel v. United States, supra,* 71 U.S.App. D.C. at 114, 107 F.2d at 295; *Fitzgerald v. United States, supra,* 412 A.2d at 9, we note that no complaint, nor subsequent utterance, was made by the child on her own initiative. When we consider Mrs. Alston's repeated shaking and questioning of her daughter (which Mrs. Alston admitted would have, alone, been sufficient to upset the child) which preceded the child's first identification of appellant as her assailant along with the victim's inconsistent responses to subsequent inquiry by Mrs. Alston, made in Mrs. Walton's presence, as to whether Butch was the assailant, we agree with the trial court's initial evaluation that the trustworthiness of the utterances was "somewhat speculative" and "marginal, at best."

■ Whether a declaration constitutes a spontaneous utterance depends on the facts and circumstances of each case, and admission of such statements is committed to the sound judicial discretion of the trial court. *Nicholson v. United States, supra,* 368 A.2d at 564. We will reverse on appeal only if a ruling is clearly erroneous. *Beausoliel v. United States, supra,* 71 U.S.App.D.C. at 113–14, 107 F.2d at 294–95.

■ After evaluating the declarations made by the victim in the presence of Mrs. Walton, Ms. Terry and Officer White against the yardstick of *Nicholson,* we find

that the statements do not meet the criteria required to be classified as excited utterances and their admission into evidence was, therefore, erroneous. Because the hearsay statements made by the child were the only direct evidence presented which identified appellant as the assailant, we cannot say that the admission of this testimony did not substantially sway the judgment of the jury in its deliberations. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), and conclude therefore, that the admission of the testimony does not constitute harmless error. We reverse and remand.

*So ordered.*