Gregory LUCAS, Appellant,

v.

UNITED STATES, Appellee.

No. 83–537.

District of Columbia Court of Appeals.

Argued July 1, 1986.
Decided March 18, 1987.

Calvin Steinmetz, Washington, D.C., appointed by this court, for appellant.

Thomas J. Motley, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and Barry M. Tapp, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, NEWMAN and BELSON, Associate Judges.

BELSON, Associate Judge:

Appellant, Lucas, was tried as an adult on charges of first-degree murder and related offenses allegedly committed when he was sixteen years old. He was acquitted of the principal charge, but convicted of the lesser-included offense of manslaughter. We reversed that conviction on appeal because of an error by the trial judge. On retrial for manslaughter, Lucas was once again convicted of that offense. This, his second appeal, presents the question whether Lucas was properly tried a second time as an adult, given that the original predicate for trying him as an adult was the first-degree murder charge, and a manslaughter charge of itself would not have warranted trying him as an adult. We hold that the Criminal Division of the Superior Court retained jurisdiction and properly entertained his second trial. Because we also reject appellant's assertions that the evidence was insufficient to support his convictions and that prosecutorial misconduct constituted reversible error, we affirm.

The government's evidence showed that at approximately 1:30 a.m. on July 4, 1978, two men drove into the District of Columbia to purchase drugs in the Fourteenth Street area of Northwest. On Wallach Place, the driver, Marvin Kropelnicki, pulled the car over to the curb. Two youths, between sixteen and eighteen years old, approached the car on the passenger's side. The passenger, Steven Cohen, attempted to purchase some "bam" (preludin) with about sixty dollars, which he held up at the window. Kropelnicki looked around and saw five to seven youths approach the passenger side of the car. Kropelnicki testified that, at this point, he heard someone say, "Give me the money." Kropelnicki looked to his right, and saw a gun held at the passenger window. Again someone said, "Give me the money." As Kropelnicki was letting the clutch out of his car to depart, Cohen was shot, almost directly between the eyes.

Appellant later admitted to the police that he had held the gun at the car window, but said the gun had discharged accidentally as Kropelnicki and Cohen attempted to drive away without paying for pills appellant had handed them.

On September 27, 1978, appellant was indicted for first-degree (felony) murder while armed, D.C. Code § 22-2401 (1981), § 22-3202 (1981) (amended 1983), attempted robbery while armed, D.C. Code §§ 22-2902, -3202 (1981) (amended 1983), and

carrying a pistol without a license, D.C. Code § 22–3204 (1981). Following a jury trial, appellant was found guilty of involuntary manslaughter while armed, a lesser-included offense of first-degree (felony) murder while armed, and of attempted robbery, a lesser-included offense of attempted robbery while armed. In addition, appellant was found guilty of carrying a pistol without a license.

In *Lucas v. United States,* 436 A.2d 1282 (D.C.1981), this court reversed appellant's convictions. We held that the trial court erred in failing sua sponte to caution the jury, immediately after the government impeached one of its own witnesses with grand jury testimony, that it should not consider the contradictory grand jury testimony as substantive evidence. *Id.* at 1283–85. Because the grand jury testimony rebutted a key part of Lucas' alibi defense and corroborated admissions by Lucas that he repudiated at trial, we held the error was not harmless. *Id.* at 1285.

A second jury trial was held on the three charges for which appellant had previously been found guilty. Once again, a jury returned verdicts of guilty on all three charges. Appellant raises three issues on appeal, none of which warrants reversal.

■ One of appellant's challenges to his conviction is fundamental. He contends the trial court lacked subject matter jurisdiction over the charges against him. Specifically, appellant maintains that the Criminal Division of the Superior Court lost jurisdiction to entertain the case once the first jury returned a guilty verdict of involuntary manslaughter instead of first-degree (felony) murder. Appellant was sixteen years old at the time of the crime. As a general rule, the Family Division of the Superior Court has exclusive jurisdiction over juveniles accused of delinquent acts

that would be criminal if committed by a person eighteen years of age or older. *Logan v. United States,* 483 A.2d 664, 667 (D.C.1984). The government contends that one of the exceptions to the rule applies here, and we agree.

As appellant acknowledges, the exclusive jurisdiction of the Family Division extends only as far as the definition of "child" in D.C.Code § 16–2301(3) (1981).[1] This definition, when read together with the provision granting the Family Division exclusive jurisdiction over procedures in which a "child" is alleged to be delinquent, D.C.Code § 11–1101(13) (1981), makes it clear that the Family Division lacks exclusive jurisdiction over individuals sixteen years old or older, such as appellant, "charged" with murder (and any other joinable offense) "and convicted ... of a lesser included offense." The interpretive difficulty here arises from the fact that while appellant was charged with first-degree (felony) murder while armed at his first trial, and stands convicted of a lesser-included offense, voluntary manslaughter while armed, as a result of his second trial, this court reversed appellant's original conviction for the lesser-included offense. Appellant would read into D.C.Code § 16–2301(3)(B) an unstated requirement that the charge and conviction referred to therein occur within the confines of a single trial. For the reasons set forth below, we decline to adopt this interpretation.

■ Our review of the case law discloses no authority directly on point. *Brown v. United States,* 343 A.2d 48 (D.C.1975), however, furnishes useful guidance. In *Brown,* this court held that the identical statutory language relevant here defeated the argument that, when a sixteen-year-old charged with armed robbery, the charge upon which his prosecution as an adult was

---

1. The relevant portion of D.C.Code § 16–2301(3) reads as follows:

The term "child" means an individual who is under 18 years of age, except that the term "child" does not include an individual who is sixteen years of age or older and—
　(A) charged by the United States [A]ttorney with (i) murder, forcible rape, burglary in the first degree, robbery while armed, or assault

with intent to commit any such offense, or (ii) an offense listed in clause (i) and any other offense properly joinable with such an offense;
　(B) charged with an offense referred to in sub-paragraph (A) (i) and convicted by plea or verdict of a lesser included offense; or
　(C) charged with a traffic offense.

founded, was convicted of robbery instead, the Criminal Division lost jurisdiction over the youth for sentencing purposes. *Id.* at 51. While not squarely on point, *Brown* is instructive in that it rejected the view that the Criminal Division automatically loses jurisdiction over juveniles charged as adults as soon as the charge upon which adult treatment was founded drops out of the case. *Cf. Montgomery v. United States,* 521 A.2d 1150 (D.C.1987). Given that D.C.Code § 16–2301(3)(B) has been construed in *Brown* to permit the Criminal Division to pass sentence on a sixteen-year-old whose most serious conviction was for simple robbery, we think the more consistent construction of the statute is to permit the Criminal Division to retain jurisdiction over a sixteen-year-old convicted of involuntary manslaughter while armed, when the youths in both instances were originally charged with offenses for which they were properly tried as adults.

■ We also observe that our interpretation of this statute to permit the Criminal Division to conduct a second trial in this case, despite the reversal of appellant's conviction for a lesser-included offense of murder, harmonizes with a well-settled precept of double jeopardy jurisprudence, the continuing jeopardy principle. While double jeopardy principles do not control what is in essence a question of statutory construction, we would be concerned if we found those principles incongruent with our result. The general rule is that jeopardy does not fully terminate, and retrial may occur, with respect to a crime for which a person was originally convicted, notwithstanding reversal of that conviction on appeal. *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311 (1984); *see Price v. Georgia,* 398 U.S. 323, 326–27, 90 S.Ct. 1757, 1759–60, 26 L.Ed.2d 300 (1970); *Edmonds v. United States,* 106 U.S.App.D.C. 373, 378–79, 273 F.2d 108, 113–14 (1959), *cert. denied,* 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960); *cf. Richardson v. United States,* 468 U.S. 317, 325–26, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984) (retrial following hung jury does not violate double jeopardy clause). Viewed in the light of that rule, Lucas' second trial is seen as a continuation of the first.

An exception to the general rule permitting retrial after a reversal is that where a conviction is reversed for insufficiency of the evidence, jeopardy terminates and retrial is barred. *Richardson, supra,* 468 U.S. at 325, 104 S.Ct. at 3086.

■ This brings us to our consideration of appellant's contention that the evidence was insufficient to sustain his convictions. We are not persuaded. In effect, appellant argues that the only evidence against him was his own admission that he held a gun at the car window where the victim sat, and that the gun discharged. As explained in *Hicks v. United States,* 127 U.S.App.D.C. 209, 214 n. 6, 382 F.2d 158, 163 n. 6 (1967), "an admission of homicide must be corroborated by tangible evidence of the death of the supposed victim," but there is no requirement of a "link, outside the confession, between the injury and the accused who admits having inflicted it." (Citations omitted.) Here, not only did appellant admit to the shooting, there was an eyewitness to the crime, Marvin Kropelnicki, who corroborated the essential facts, although he could not identify appellant. Moreover, the victim's body established that the crime occurred. Thus, there was more than enough evidence to sustain appellant's convictions.

■ Appellant also insists that prosecutorial misconduct warrants reversal of his convictions. We discern error, but decline to reverse. The prosecutor's opening statement, in explaining how appellant came to be arrested for the killing, recounted how an informant told the police "who was responsible, allegedly responsible, for the shooting." Such testimony by a police officer would be hearsay and inadmissible. "[W]hile an officer may testify before a jury that, acting upon information, he did certain things, he may not go further and testify as to precisely what he was told about the particular place or the particular person." *Smith v. United States,* 70 App. D.C. 255, 256, 105 F.2d 778, 779 (1939) (per

curiam) (harmless error because not preju-
dicial and because court gave cautionary
instruction). Here, the prosecutor's refer-
ence to this matter was isolated, the trial
court gave a cautionary instruction, and
the government's case was strong.[2] *See
Dyson v. United States*, 418 A.2d 127, 132
(D.C.1980). In light of the foregoing, we
hold that the prosecutor's error was harm-
less.

*Affirmed.*

---

2. Admitted into evidence as a part of the
government's case was an admission by appel-
lant that arguably was not dissimilar to the
prosecutor's remark. Appellant's admission
was that he had the pistol at the scene of the
shooting and that it "went off when they tried to
drive off without trying to pay me."