Broadus WALKER, Appellant,

v.

UNITED STATES, Appellee.

Andre ABNEY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 91–CF–1489, 92–CF–144.

District of Columbia Court of Appeals.

Argued May 26, 1993.
Decided Aug. 19, 1993.

Douglas J. Wood, New York City, for appellant Walker.

William S. Rhyne, McLean, VA, appointed by this court, for appellant Abney.

James C. Bohling, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, and Thomas C. Black, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN and SULLIVAN, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellants, who were co-defendants in a joint trial, were convicted of second-degree murder while armed, in violation of D.C.Code §§ 22–2403, –3202 (1989 Repl.). Both appellants Walker and Abney moved repeatedly, prior to and during the trial, for severance pursuant to Super.Ct.Crim.R. 14, on grounds that their defenses to the charges were irreconcilable.

In addition to their severance claims, each appellant individually claims that the trial court abused its discretion in denying their other respective motions. Appellant Abney, individually, claims that the trial court erred in excluding evidence that would have benefitted his case. Specifically, Abney claims that a government witness would have testified that following the stabbing of the victim, Abney told this witness that he did not know that Smith had been stabbed, and that he would avenge the stabbing by retaliation against Walker. The trial court excluded the statement because it would have bolstered a "frivolous" basis for a motion for severance.

Walker, individually, claims that the trial court erred by denying his motion for a mistrial on grounds that the government failed to substantiate a representation made in its opening statement. Specifically, in its opening statement, the government stated that it would produce a witness who would testify that following the stabbing, Walker admitted to this witness that he had stabbed Smith. This witness was not produced, however, and at the conclusion of the government's case, Walker moved for a mistrial. The trial court denied appellant's motion, reasoning that the prosecutor did not make the representation in bad faith, the remark was not critical to the government's otherwise strong case, and based on the trial court's instruction to the jury that such a statement was not evidence in the case. Walker appeals from the trial court's ruling.

Finding no abuse of discretion, we affirm.

## I.

### A. *The Government's Evidence.*

According to the government's evidence, during the early morning hours of July 7, 1990, Andre Abney held his brother, John Smith, while Broadus Walker stabbed Smith with a nail file six times. Smith died as a result of wounds inflicted during this attack, which occurred in the front yard of the Abney home. The government's case rested on the testimony of five eyewitnesses to the murder, a medical examiner, and two officers of the Metropolitan Police Department ("MPD").

Jacqueline Whittaker, appellant Walker's girlfriend, testified that on July 6, 1990, the day before the murder, she had seen Walker in the possession of a nail file. After midnight, Whittaker and Walker drove to the Abney house to deliver some food to Myron Carter, the brother of Whittaker's cousin, who was staying at the Abney house. From the car, Whittaker saw Smith, Walker and Abney on the porch. Whittaker testified that Smith took a swing at Walker and missed, after which Abney grabbed Smith in the mid-chest area and held his hands down. As Abney held Smith, Walker made straight in and out hitting motions to Smith's stomach. Whittaker did not see an object in Walker's hand, nor did she see Abney hit Smith in the stomach, although she did see Abney hit Smith once in the head. Following the fight, Walker returned to the car, and while driving, Whittaker informed Walker that she saw a police car turn around as if it would pull them over. At this point, Whittaker testified that she saw Walker throw the same object that she had seen earlier that day out of the car window. The police searched the area around the car for a knife or similar object, but did not recover one.

Gerald Bean, the twelve-year-old brother of Myron Carter, also testified that he had seen Walker with a fingernail file on July 6, 1990. Bean was staying overnight at the

Abney house on July 7, 1990, and witnessed the incident. Bean, who watched the fight from a downstairs window and then from the front door, testified that Walker threw the first punch and hit Smith in the face. At that point, Abney came outside and held Smith so that he could not move his hands, while Walker hit him in the stomach three to five times. Bean did not see a knife in Walker's hand.

Angelic Elliott, a sixteen-year-old cousin of Abney and Smith, testified that she saw Walker threaten Smith with a knife that looked like a fingernail file in the kitchen of the Abney house prior to the fight. From the upstairs bedroom window, Elliott saw Walker swing at Smith as Smith walked out of the door of the house. Abney grabbed Smith and held his arms so that Smith could not move them. Walker then made hitting motions to Smith's chest, but she did not see an object in Walker's hand. Elliott testified that Smith then collapsed and Walker kicked him in the front part of his body. Abney then hit Smith in the back of the head, but he did not hit him in the stomach. Elliott further testified that she never saw an object in Abney's hand.

Bridgett Smith, a thirteen-year-old niece of Abney and Smith, testified that she also heard Walker threaten to "shank" Smith shortly before the fight. Watching the events from the living room window, Bridgett testified that as Smith walked out of the door, Walker "just started stabbing him." Bridgett testified that Abney held Smith's arms while Walker stabbed him three or four times. After Abney let go of Smith, who fell, Walker kicked Smith and fled to the car. Bridgett further testified that she saw a knife in Walker's hand at the time Walker was stabbing Smith. She did not see Abney with a knife, nor did she see Abney hit Smith in the stomach. After this incident, Abney returned inside the house, and in response to questions about

what had happened, he referred to Smith having hit him previously with a pole.

The government's final eyewitness was fifteen-year-old Deshaun Smith, who was Bridgett Smith's sister, and the niece of Abney and Smith. Deshaun testified that after Walker entered the house at 1:00 or 2:00 a.m., Smith, who was drunk, told Walker that he had to leave. Deshaun then heard Walker threaten to "shank" Smith. At this point, she saw a weapon in Walker's hand which was partially concealed. Deshaun described it as a one and one-half inch point that was sticking out from his hand. Deshaun testified that as Smith went outside on the porch steps, Walker hit him in the face. Abney then grabbed Smith while Walker proceeded to stab him at least four times.

Deshaun testified that Abney did nothing to prevent Walker from stabbing Smith. According to Deshaun, as Smith was falling, Walker kicked him and then ran off to the car. As Smith was getting up, Abney hit him in the face. Deshaun stated that the entire fight lasted a minute or so.

The government presented, in addition to these eyewitnesses, a licensed medical examiner who had been present for the autopsy performed upon Smith on July 8, 1990. The medical examiner testified that the autopsy revealed six stab wounds, two of which caused visceral injuries to the heart and lungs and internal hemorrhaging, which caused Smith's death. All six wounds appeared to have an upward trajectory into the body, which could have resulted from the victim having been bent or twisted as the assailant struck him with the knife. The medical examiner also testified that the attacking instrument had two sharp edges, and indicated that a nail file would be included as one of the possible weapons.

### B. *Defendant Walker's Evidence.*[1]

Walker testified in his own defense. He admitted having a nail file in his possession

---

1. Walker presented a forensic pathologist who testified that three of the victim's wounds were too deep to be produced by a knife with a one and one-half inch blade. He further testified that he would expect two of the stab wounds to bleed externally onto the clothing of the assailant; however, he conceded that some bleeding would occur internally due to the lung would which may have caused "backpressure" to occur.

on July 6, 1990, but that he had left it in Carter's car. According to Walker, later that night, he and Abney walked outside the door of the Abney house, followed by Smith who came out and hit Walker. Walker then swung back at Smith, hitting him in the face area. According to Walker, he never punched Smith in the chest or kicked him in the throat.

At this point during the fight, Walker testified that he heard someone yelling from the house to stop fighting "[s]o I just backed off." Walker further testified that Abney began fighting with Smith, and "I just turned around and left." Walker claimed that he returned to the car where Whittaker was waiting. As he approached the car, he testified that Abney had Smith on the ground and was punching him in the face. Walker stated that he did not see a knife in Abney's possession. Contrary to Whittaker's testimony, Walker denied throwing an object out of the car on the night in question.

### C. *Defendant Abney's Evidence.*

Diane Abney, appellant's twenty-year-old sister, testified that Walker entered the house around midnight on the night in question. Smith came upstairs from the basement and told Walker to leave the house, to which Walker "pulled out this little knife and said, 'I'll shank you.'" Walker then went outside, and as he tried to open the screen door, Smith slammed it in Walker's face. Diane Abney then went upstairs to take a shower when she heard Angelic Elliott scream, which caused her to run to an upstairs window. She saw Abney holding Smith, who was leaning down, in his grasp. She saw "a little shiny part" in Walker's hand, which caused her to run downstairs, where she saw Walker jump in a car and pull off. Abney was left standing beside Smith who was leaning over.

Smith and Abney then entered the house; Abney had no blood on him, but Smith bled

on the floor and proceeded downstairs. Someone had asked Abney why he did it, to which Abney responded that it was because of the previous pole incident.[2]

Abney testified on his own behalf. He stated that on the morning of July 7, 1990, while he was sleeping, he heard voices arguing at approximately 3:00 or 4:00 a.m. Abney walked downstairs and saw Smith and Walker arguing with each other on either side of the screen door. Abney then went out on the porch to talk to Walker, and Smith followed him outside and began physically fighting with Walker.

Abney testified that he attempted to push Walker and Smith back away from each other. While Abney stood between them, Walker ran around a bush in the yard, and then they (Walker and Smith) "got back into each other's face." Walker struck Smith in the face, causing Smith to fall, and then Walker kicked Smith in the face, and Smith clung to the fence. Abney then attempted to lift Smith up from the waist, but was unsuccessful in raising him, and Smith fell back into the fence with Abney's hands still around his waist. Abney testified that as he lifted his brother up, he saw Walker's hand movements, but could not see if Walker actually hit Smith since Smith's head obstructed his view. He made no attempt to push Walker off of Smith. Abney further testified that he had not seen a weapon in Walker's hand, nor was he aware that Smith had been stabbed. Abney denied being asked why he had done it after he returned inside the house.

### II.

### A. *Appellant Walker's Motion for Severance.*

Walker claims the trial court abused its discretion when it denied his motion for severance pursuant to Super.Ct.Crim.R. 14,[3] on the ground that his defense irrecon-

---

**2.** Rosa Marie Abney, appellant's seventeen-year-old sister, testified that previously she had seen Smith hit Abney with a pole.

**3.** Super.Ct.Crim.R. 14 provides in pertinent part: If it appears that a defendant ... is prejudiced by a joinder of ... defendants ... for trial

together, the Court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.
*Id.*

cilably conflicted with his co-defendant, Andre Abney's defense. Walker claimed that because the strongest evidence presented by the government rested on the fact that each defendant claimed the other had committed the crime, the jury inferred from the nature of the defenses alone that Walker was guilty. We do not agree.

A strong presumption exists that defendants jointly charged with committing an offense will be tried together. *Taylor v. United States,* 601 A.2d 1060, 1063 (D.C. 1991) (citing *Jennings v. United States,* 431 A.2d 552, 556 (D.C.1981)), *cert. denied,* 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982). A defendant may overcome this presumption by demonstrating a sufficient degree of prejudice under Super.Ct.Crim.R. 14. An order denying severance pursuant to Super.Ct.Crim.R. 14 may be reversed only upon an abuse of discretion. *Id.* (quoting *Winestock v. United States,* 429 A.2d 519, 526 (D.C.1981)).

A severance on the ground of irreconcilable defenses, as argued here by Walker, may only be obtained if the defendant shows "that an 'inherent irreconcilability' results from 'a clear and substantial contradiction between respective defenses,'" *id.* (quoting *Garris v. United States,* 559 A.2d 323, 329 (D.C.1989)), "and further 'that the irreconcilability creates a danger or risk that the jury will draw an improper conclusion from the existence of the conflicting defenses alone that both defendants are guilty.'" *Id.* The trial judge, in evaluating the evidence offered against the defendant, independent of the conflicting evidence presented by the co-defendant, may deny the severance motion only if there is " 'enough independent evidence of a defendant's guilt—beyond that required for the government to survive a motion for judgment of acquittal—so that the judge reasonably could find, with substantial certainty, that the conflict in defenses alone

would not sway the jury to find the defendant guilty.' " [4] *Id.* 601 A.2d at 1064 (quoting *Garris, supra,* 559 A.2d at 330).

With these principles in mind, we turn to the claims in this appeal. Walker and Abney contend that their defenses are irreconcilable because each claimed that the other defendant committed the offense. The trial judge found, and the government agreed, as we do, that these defenses were irreconcilable. Walker's claim that Abney stabbed Smith, and Abney's claim that Walker stabbed Smith, cannot both accurately portray the events at the Abney house on the night in question.

Accordingly, the issue to be resolved is whether there was enough independent evidence of each defendant's guilt, beyond that necessary to withstand a motion for judgment of acquittal "—to be sufficient to negate the likelihood the jury would find [Walker and Abney] guilty based on the conflict in defenses alone." *Id.* This court has repeatedly held that the testimony of a single eyewitness may be enough to overcome the danger of prejudice from conflicting defenses. *Id.* (citing *Reynolds v. United States,* 587 A.2d 1080, 1083 (D.C.1991); *Garris, supra,* 559 A.2d at 330; *Tillman v. United States,* 519 A.2d 166, 171–72 (D.C.1986)).

The case against Walker was overwhelming in that five government witnesses testified that Walker had made a number of hitting motions to Smith's stomach and chest. Two of the government eyewitnesses (Jacqueline Whittaker and Gerald Bean) had seen Walker in the possession of a nail file earlier on the day of the murder. Two other eyewitnesses (Angelic Elliott and Deshaun Smith) saw Walker brandish this weapon in the Abneys' kitchen/dining room area immediately before the murder. And two of these eyewitnesses (Bridgett Smith and Deshaun Smith) actually saw

---

4. The government brought the case of *Zafiro v. United States,* —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) to our attention, however, it does not affect the analysis in this proceeding. *See id.* at ——, 113 S.Ct. at 938 (stating that severance should be granted "only if there is a serious risk that a joint trial would compromise *a specific trial right* of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence") (emphasis supplied).

Walker stab Smith in the stomach and chest with the weapon. In contrast, not a single eyewitness, including Walker, testified that Abney possessed a weapon. Further, the government witnesses testified that they did not see Abney make any type of stabbing or hitting motions to Smith's chest or stomach.

██ Walker challenges the reliability of the evidence against him. He claims that the witnesses' bias was evident from the record, and thus their testimony did not constitute independent evidence of guilt. This court, however, has made clear that potential bias on the part of the witnesses does not necessarily detract from the competence of the witnesses' testimony:

Appellant misunderstands the requirement here. The five government eyewitnesses need not have been strangers to codefendant [Abney] in order to provide substantial independent evidence of appellant's [Walker's] guilt. The bias of witnesses, of course, should be considered by the trial judge when weighing the value of their testimony, keeping in mind the countervailing consideration that bias can be elicited on cross-examination for the jury to consider.

*Ready v. United States,* 445 A.2d 982, 988 n. 11 (D.C.1982), *cert. denied,* 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983).

██ The record indicates that the potential source of each witness' bias was revealed to the jury on both direct and cross-examination. Further, two of the witnesses, Whittaker and Bean, were friends of Walker's and not of Abney's, and therefore no apparent bias existed. Moreover, the testimony of the other witnesses, who are related to Abney, did not inculpate Walker and exculpate Abney as presumably they would if their testimony were biased. Each of these witnesses testified that Walker stabbed Smith while Abney held him, and each witness understood that this testimony was, at its least harmful, against Abney's interest, and at its most harmful, inculpatory toward Abney.

Walker also contends that the absence of blood on his clothing that he wore on the night of the murder is inconsistent with his expert witness' testimony that Smith's wounds would have bled on his assailant's clothing. The government's witness testified, however, that most of the bleeding would have been internal due to the wound to the lung. Walker's witness, in fact, conceded this point that the lung wound could cause the blood to remain inside the body rather than to spill outside. Further, the eyewitness' testimony indicated that Smith did not begin to bleed significantly until after the fighting had ended and he returned into the house.[5]

Given "our repeated observation that the testimony of a single eyewitness may be enough to overcome the danger of prejudice from conflicting defenses," *Taylor, supra,* 601 A.2d at 1064 (citations omitted), the government in the present case presented the testimony of five eyewitnesses, two of which testified to actually having seen Walker stab Smith. We therefore conclude that there was enough independent evidence presented at trial, such that the trial court reasonably could find, with substantial certainty, that the conflict in defenses alone would not sway the jury to find appellant Walker guilty. *Tillman, supra,* 519 A.2d at 171.

### B. Appellant Abney's Motion for Severance.

Abney asserts on appeal that the trial court misapplied the legal standard relating to the severance of conflicting claims. Specifically, Abney argues that the trial court misread the standard in *Ready, supra,* 445 A.2d at 986–87, and reasoned that it was more beneficial to try Walker and Abney together because their defenses conflicted. The record reveals that the trial court, here, recognized the test set forth in *Ready, supra,* that it (1) must determine if Walker's and Abney's defenses were irreconcilable; and (2) if so, determine if there was a danger that the jury unjustifiably would infer that this conflict alone demon-

5. The MPD officers at the scene confirmed this testimony by reporting that they found little blood outside the house, but a significant amount of blood inside Smith's room.

strated that both were guilty. *Id.* The record indicates that not only did the trial court acknowledge this standard, but it sought to explain it further by stating that "what the Court means is evidence beyond a prima facie case, beyond what it would take for the government to survive a motion for judgment of acquittal."

The record demonstrates that the government presented substantial independent evidence to support its theory, *i.e.,* that Abney aided and abetted Walker by holding Smith while Walker stabbed him, beyond that necessary to survive a motion for judgment of acquittal. *Tillman, supra,* 519 A.2d at 171. All five government witnesses testified that Abney held Smith as Walker hit/stabbed him. Walker was within one foot of Smith and Abney during the stabbing. Two government witnesses actually saw Walker stab Smith while Abney held him. Moreover, Angelic Elliott and Bridgett Smith both testified that when questioned as to why he did it, Abney responded that it was because of an earlier confrontation that he had had with Smith.[6]

Abney also contends that the defense instruction offered by Walker prejudiced him because Walker's defense rested on the premise that Abney alone stabbed Smith, and this directly conflicted with his own defense that Walker was the sole assailant. The jury verdict demonstrates, however, that it rejected Walker's theory because it convicted him of stabbing Smith while Abney aided and abetted him.

Given the strength of the independent evidence presented by the government, we cannot say that the trial judge abused his discretion in finding that "there was sufficient evidence in the record, beyond that needed to survive a motion for acquittal, to support the trial judge's conclusion that the conflicting defenses alone would not cause the jury to find [Walker and Abney] guilty." *Taylor, supra,* 601 A.2d at 1065.

## C.  *Abney's Excluded Testimony.*

Appellant Abney contends that the trial judge abused his discretion when he excluded a statement from Angelic Elliott which Abney's counsel attempted to elicit on cross-examination. Abney's counsel proffered that the witness would have relayed that she heard Abney state, after he had come into the Abney house on the night in question, that he was not aware that Smith had been stabbed, and that he would retaliate against Walker. The trial court excluded these statements, reasoning that they were self-serving hearsay statements which would have implicated Walker, and thereby would have bolstered "an otherwise frivolous motion for a severance."

Where a defendant has repeatedly filed motions to sever his or her case, and these motions have been denied, the trial court assumes a heightened obligation to assure that the defendant was not prejudiced as a result of the joinder. *See, e.g., Hordge v. United States,* 545 A.2d 1249, 1258 (D.C.1988); *Carpenter v. United States,* 430 A.2d 496, 501 (D.C.) (en banc) ("once a severance issue is presented the court has a continuing duty to take adequate measures to guard against unfair prejudice from joinder"), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981).

Abney contends that the trial court should have admitted these statements under one of three exceptions to the hearsay rule: (1) excited utterance; (2) present sense impression; or (3) a statement of then existing mental condition. The trial court determined that although there may be some reasons to admit this testimony, it also agreed with the prosecutor's characterization of the statements as a "self-serving declaration."

6.  Abney also argues that Walker and the government presented evidence against him which would not have been admissible in a separate trial. Abney specifically refers to evidence brought out by Walker's counsel concerning the pole incident which he contends would not have been admissible in a separate trial. However, given that the government already had elicited evidence on this topic during its cross-examination of Abney's witnesses, it remains unclear as to why this information would not be admissible in a separate trial.

The elements constituting a spontaneous utterance are: "(1) the occurrence of a startling event which 'causes a state of nervous excitement or physical shock in the declarant, (2) a declaration made within a reasonably short period of time after the occurrence so as to assure that the declarant' did not reflect upon the event and possibly fabricate a statement, and (3) 'circumstances, which in their totality suggest spontaneity and sincerity of the remark.'" *Price v. United States*, 545 A.2d 1219, 1226 (D.C.1988) (quoting *Alston v. United States*, 462 A.2d 1122, 1126–27 (D.C.1983)). Abney fails to satisfy the first and third elements, and thus the trial court properly excluded this testimony.

Absent evidence that Abney " 'suffered mental disturbance or shock as a result of the event,' " *id.* (quoting *Alston, supra*, 462 A.2d at 1127), the first element remains unsatisfied. If the declaration is "a calm narrative of a past event, it loses the character of a spontaneous utterance." *Alston, supra*, 462 A.2d at 1127. There is no indication, in this proceeding, demonstrating that Abney, the declarant, was distraught, in shock, or in a state of nervous excitement at the time the statement was uttered.[7] Accordingly, the trial court had no basis, in the existing evidence, to find that the first element had been satisfied.

Abney also failed to satisfy the third element because it is apparent that the circumstances surrounding the incident, in its entirety, suggested a lack of spontaneity and sincerity. For instance, Angelic Elliott testified that after the fight, when Abney returned inside the house, and was questioned by one of the witnesses as to why he did it, Elliott stated that "he [Abney] said because I—I didn't forget what he had—what he had done to me." Other witnesses in the Abney house testified that when questioned as to why he did it, Abney referred "to some pole incident," which alluded to a previous confrontation with Smith.

Similarly, Abney's claim that these statements constituted a "present sense impression" is without merit. The "present sense" rule requires that a statement must describe or explain an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. *See Burgess v. United States*, 608 A.2d 733, 739 (D.C.1992) (per curiam). Clearly, Abney's statement to Elliott, that he was unaware of the stabbing, fails to fall within the requirements for "present sense impression" since it did not *describe the event*, but instead related a fact which the declarant *did not perceive*.

Abney's statement of avenging the stabbing by retaliating against Walker does not satisfy the "state of mind" exception either because Abney's state of mind was not at issue in the case. Rather, the issue centered on Abney's knowledge of Walker's actions during the fight, not his state of mind. The threshold requirement to admit an out-of-court statement under the "state of mind" exception rests on whether the declarant's state of mind is at issue in the case. *Nelson v. United States*, 601 A.2d 582, 596 (D.C.1991) (citations omitted). "The law is clear that when a declarant's state of mind is at issue, extrajudicial statements which reveal that state of mind are admissible." *Id.* Abney's state of mind was not at issue in the case, and therefore his extrajudicial statements about Walker are not admissible under the "state of mind" exception.[8] Accordingly,

---

7. Abney claims that he was crying and upset, however, this reaction occurred *after* Abney discovered that his brother had been stabbed:

   Q: Mr. Abney, how were you feeling *knowing your brother* had just been *stabbed*?
   A: Hurt.
   Q: Did you say anything?
   A: No.
   Q: Were you upset?
   A: Yes.

8. Even assuming *arguendo* that the trial judge erred in not admitting appellant's statement under the "state of mind" exception to the hearsay rule, the error was harmless because the evidence against appellant was substantial. In determining whether the error was harmless, we consider whether it can be said " 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Goins v. United States*, 617 A.2d 956, 960 (D.C.1992) (quoting *Kotteakos*

we conclude the trial court did not err in excluding Abney's testimony.

### D. *Walker's Motion for a Mistrial.*

Appellant Walker contends that the trial court abused its discretion by denying his motion for a mistrial on grounds that the government failed to substantiate a representation made in its opening statement. Specifically, the prosecutor told the jury, in its opening statement, that Myron Carter, Whittaker's cousin, and a friend of Walker's, would testify that following the stabbing, Walker admitted to Carter that he had stabbed Smith. In defiance of a government subpoena, Carter did not appear in court, and thus the government was unable to substantiate this representation.

Walker claims that no possible instruction would cure the prejudicial impact of this statement, and accordingly defense counsel did not request one. The trial court, however, did instruct the jury that "the statements and the arguments of counsel [made during opening statement] are not evidence in the case. And you must separate evidence from statements and arguments made by the attorneys." We conclude that the trial court did not abuse its discretion.

■■■ "The law does not require that the opening trial statements be completely supported by evidence introduced during the trial." *Robinson v. United States,* 361 A.2d 199, 200 (D.C.1976) (internal quotations and citation omitted). This court has further determined that "the failure to sustain all opening remarks during the trial is not automatically ground for a new trial." *Id.*

The trial court specifically found that the prosecutor did not make this representation in its opening statement in bad faith. Further, the prosecutor's reference to Carter's proposed testimony was not critical to the

government's case, which otherwise was strong. *See Lucas v. United States,* 522 A.2d 876, 879–80 (D.C.1987). Finally, we conclude that any possible prejudice to Walker was cured by the trial court's instructions to the jury that the arguments set forth in counsels' opening statements are not evidence in the case, and that as jurors, they must separate these statements from the actual evidence. *See Robinson, supra,* 361 A.2d at 200.

### III.

In sum, we agree with the trial court that the defenses presented by Walker and Abney were irreconcilable. We affirm the trial court's denial of appellants' motions for severance on grounds that there was sufficient independent evidence of each appellant's participation in the offense, such that the guilty verdict was not the result of the conflicting defenses alone. *See Taylor, supra,* 601 A.2d at 1063.

We also affirm the trial court's ruling to exclude the testimony of a government witness who would have testified that she heard Abney state that he was unaware that Smith had been stabbed. Finally, we conclude that the trial court did not abuse its discretion in denying Walker's motion for a mistrial because the government did not act in bad faith and a curative instruction was given. *See Lucas, supra,* 522 A.2d at 879–80. Accordingly, the convictions are

*Affirmed.*

FERREN, Associate Judge, concurring in part and dissenting in part:

I join in Parts I., II.A., and II.B. of the majority opinion and thus vote to affirm Walker's conviction. However, I respectfully dissent from Part II.C. of that opinion. Because (1) the trial court did not adequately explain its ruling in refusing to

---

*v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). While the credibility of appellant's statement, made immediately after the incident, may have carried more weight than appellant's own words made at trial, given the testimony of several eyewitnesses who saw appellant holding his brother during

the stabbing, particularly the testimony of medical experts as to the entry of the wounds in relation to Smith's bowed position and appellant's ability to see Walker, we conclude that the prejudice, if any, from not admitting appellant's statement was harmless.

admit some of the defense-proffered testimony of Angelic Elliott, and because (2) I cannot say from this record that the proffered testimony was inadmissible as a matter of law, and because (3) any error in refusing to admit the evidence could not have been harmless, I would remand the record for a clear trial court ruling on admissibility before deciding whether to affirm or reverse Abney's conviction.

### I.

There was powerful testimony—including testimony from defense witnesses—that Abney had a motive for aiding and abetting Walker in the stabbing death of John Smith. A defense witness, Angelic Elliott, testified at trial that appellant Abney, upon returning to the house after Smith had been stabbed, gave a reason for what had happened. According to Elliott, "before we found out that [John Smith] was stabbed ... somebody said well, Andre [Abney,] why did you do that. And then he said because I—I didn't forget what he had—what he had done to me." Others testified that, back inside the house, when asked what happened, Abney referred to a "pole incident"—to what "John [Smith] did to him with the pole." More specifically, the prosecutor's colloquy with defense witness Diane Abney revealed: "Q[:] And did he hit him [with the pole]? A.[:] I guess so."

The defense, however, proffered additional testimony by Angelic Elliott that would have undercut the evidence that Abney had aided and abetted a killing, in contrast with a lesser assault. Defense counsel proffered that Elliott would further testify that Abney, upon returning to the house after Smith had been stabbed, also "stated that he did not know that John [Smith] had been stabbed and that he was going to get [Walker] back." That evidence was consistent with Abney's own testimony that he had tried to help John Smith by picking him up after Walker had struck him, and that when Walker approached again, as Abney held Smith, Abney could see "hand movement" but could not "see if he had struck him or not"

because Smith's head was obstructing Abney's view.

Taking all of Angelic Elliott's testimony together, defense counsel could have argued that, even if the jury did not believe Abney was trying to help Smith but instead was trying to avenge the "pole incident," Abney at most knowingly helped Walker beat up Smith; Abney did not knowingly help kill him. The trial court, however, refused to admit the proffered testimony because it was a "self-serving declaration." The court apparently rejected the prosecutor's objection that the statement was inadmissible hearsay. The court said, "I could think of—I could think of at least two reasons that I could let it in. However, I don't think it's favorable to your [the government's] case to keep it out and I think that it does bolster what I see as an otherwise frivolous motion for a severance and I'm going to keep it out."

The trial court's analysis is troublesome. If the court believed the severance motion was "otherwise frivolous," the court was indicating that it believed the proffered testimony might have sufficiently implicated Walker to tip the balance in favor of a severance. If that was the court's reasoning, based on its continuing obligation to guard against prejudice from joinder, *see Hordge v. United States*, 545 A.2d 1249, 1257–58 (D.C.1988), the court had an equal duty to guard against prejudice to Abney from joinder by making sure not to rule out probative evidence in his favor. Indeed, when a collision of interests occurs at trial "as a result of joinder," causing "undue prejudice" to either party, the court has an obligation to grant a severance. *Id.* at 1257.

We must assume that the trial court was as alert to protecting Abney from joinder as it was concerned about protecting Walker. Moreover, we cannot simply ignore the trial court's apparent belief that the proffered testimony was technically admissible, as against a hearsay objection, "for at least two reasons." Thus, we are left with the court's ruling against admission of that evidence on the ground that, given the likely prejudice against Walker, Abney had no

countervailing, protectible interest in admission of a "self-serving declaration."

I am not aware of any evidentiary rule in this jurisdiction that would preclude admission of a statement merely on the ground it is a "self-serving declaration."[1] Apparently, my colleagues also are unaware of such a rule, for they assume that the court must have been ruling out admissibility on hearsay grounds. I am not so confident that this was what the trial court was doing. The court's words effectively repudiated the prosecutor's hearsay objection. Moreover, I do not believe that the proffered testimony necessarily would fail to meet the "spontaneous utterance"[2] or "state of mind"[3] exceptions to the hearsay rule. Abney rushed into the house moments after the stabbing. He testified, without contradiction, that he was crying and upset upon discovering from others inside the house that his brother had been stabbed. *See ante* at n. 7. That news, not the fight itself, could have been a startling event causing nervous excitement leading immediately to a spontaneous and sincere statement that Abney did not know Smith had been stabbed and that he was going to get Walker back. If so, the alleged hearsay would have been a classic spontaneous utterance. *See supra* note 2. Moreover, it might have reflected a state of mind, relevant here, showing surprise and anger and thus revealing ignorance of a stabbing (in contrast with a beating) while the attack was taking place. *See supra* note 3.

On this record, and particularly in light of the trial court's own apparent rejection of the government's hearsay objection, I cannot join my colleagues in holding as a matter of law that the proffered testimony did not fall within an exception to the hearsay rule and was therefore inadmissible. On the other hand, because I cannot say as a matter of law on this record that the proffered testimony was admissible under an exception to the hearsay rule or otherwise, I believe that the record in Abney's case should be remanded to the trial court for clarification of its exclusion of the evidence. We would then be in a position to rule.

Such a remand, of course, would be unnecessary if we could conclude that any error here was harmless. I cannot do that. Although there was plenty of testimony tending to show that Abney held Walker while Walker stabbed Smith, only one piece of evidence—testimony by a medical examiner—tended directly to refute Abney's testimony that he could not see what was going on because Smith's head blocked his view.[4] I do not think we can say that this expert testimony was enough to take from the jury the issue of what Abney could see, and thus what Abney knew about the nature and severity of the beating. If the proffered testimony was erroneously excluded, Abney was entitled to have the jury consider his credibility as against the expert's.

Furthermore, the excluded statement by Abney proffered through Angelic Elliott would not necessarily have been inconsistent with Abney's admission, reported by Elliott and others at trial, that he had "not forgotten" what Smith "had done to me" (the pole incident). Even if Abney lied in testifying that he was trying to help Smith, that lie did not necessarily mean he was

---

**1.** *See* 2 JOHN WILLIAM STRONG ET AL., MCCORMICK ON EVIDENCE § 270, at 209–11 (4th ed. 1992) (footnote omitted):

> The hearsay rule excludes all hearsay statements unless they fall within some exception to the rule. Thus, no specific rule is necessary to exclude self-serving out-of-court statements if not within a hearsay exception....

[J]udgments about credibility should generally be left to the jury rather than preempted by a judicial determination of inadmissibility. This is particularly true when the credibility issue can be readily appreciated by the jury, as is generally the case when the reason to question credibility rests upon the declarant's self-serving motivation.

**2.** *See, e.g., Price v. United States,* 545 A.2d 1219, 1226 (D.C.1988); *Nicholson v. United States,* 368 A.2d 561, 564 (D.C.1977).

**3.** *See, e.g., Nelson v. United States,* 601 A.2d 582, 596 (D.C.1991); *Giles v. United States,* 432 A.2d 739, 745 (D.C.1981).

**4.** The medical examiner testified that, based on the types of wounds Smith received, he must have been doubled over.

knowingly assisting in a revenge killing rather than a revenge beating. In short, the evidence is too inconclusive for a finding of harmless error as to Abney's knowledge and state of mind at the time he was holding Smith.[5]

## II.

On remand, I would have the trial court rule on the admissibility of the defense-proffered testimony of Angelic Elliott in light of the considerations expressed above. If the court were to rule the testimony admissible, and we were to sustain that ruling, we should order a new trial.[6] If the trial court were to rule the testimony inadmissible, we would of course either affirm or reverse and remand for a new trial, depending on our view of the court's ruling.

---

**5.** Because Angelic Elliott's proffered testimony was not admitted in evidence at the joint trial and thus did not prejudice Walker, it has no bearing on Walker's conviction, and any severance issue in light of the possible admissibility of that proffered testimony is now moot.

**6.** If the trial court found the proffered testimony admissible, the trial court would not go on to opine on harmless error; that is exclusively an appellate court function. *See Davis v. United States,* 564 A.2d 31, 41–42 (D.C.1989) (en banc). In this case, having ruled on harmless error before remand, we would not repeat that exercise after remand.